# COURT OF APPEALS OF WISCONSIN
## PUBLISHED OPINION

Case Nos.:     2020AP2081-AC
                2020AP2103-AC

†Petition for Review filed

Complete Title of Case:

**2020AP2081-AC**

**WISCONSIN MANUFACTURERS AND COMMERCE, MUSKEGO AREA CHAMBER OF COMMERCE AND NEW BERLIN CHAMBER OF COMMERCE AND VISITORS BUREAU,**

    **PLAINTIFFS-RESPONDENTS, †**

  **V.**

**TONY EVERS, IN HIS OFFICIAL CAPACITY AS GOVERNOR OF WISCONSIN, KAREN TIMBERLAKE, IN HER OFFICIAL CAPACITY AS INTERIM SECRETARY OF THE WISCONSIN DEPARTMENT OF HEALTH SERVICES AND JOEL BRENNAN, IN HIS OFFICIAL CAPACITY AS SECRETARY OF THE WISCONSIN DEPARTMENT OF ADMINISTRATION,**

    **DEFENDANTS,**

**MILWAUKEE JOURNAL SENTINEL,**

    **INTERVENOR-APPELLANT.**

**2020AP2103-AC**

**WISCONSIN MANUFACTURERS AND COMMERCE, MUSKEGO AREA CHAMBER OF COMMERCE AND NEW BERLIN CHAMBER OF COMMERCE AND VISITORS BUREAU,**

    **PLAINTIFFS-RESPONDENTS,†**

**V.**

**TONY EVERS, IN HIS OFFICIAL CAPACITY AS GOVERNOR OF WISCONSIN, KAREN TIMBERLAKE, IN HER OFFICIAL CAPACITY AS INTERIM SECRETARY OF THE WISCONSIN DEPARTMENT OF HEALTH SERVICES AND JOEL BRENNAN, IN HIS OFFICIAL CAPACITY AS SECRETARY OF THE WISCONSIN DEPARTMENT OF ADMINISTRATION,**

**DEFENDANTS-APPELLANTS,**

**MILWAUKEE JOURNAL SENTINEL,**

**INTERVENOR.**

| | |
|---|---|
| Opinion Filed: | April 5, 2021 |
| Oral Argument: | March 24, 2021 |
| JUDGES:<br>  Concurred:<br>  Dissented: | Fitzpatrick, P.J., Blanchard, and Kloppenburg, JJ. |

| | |
|---|---|
| Appellant<br>ATTORNEYS: | On behalf of the defendants-appellants, the cause was submitted on the briefs of *Clayton P. Kawski* and *Anthony D. Russomanno*, assistant attorney generals, and *Joshua L. Kaul*, attorney general. There was oral argument by *Clayton P. Kawski*. |
| | On behalf of the intervenor-appellant, the cause was submitted on the briefs of and oral argument by *Thomas C. Kamenick* of *Wisconsin Transparency Project*, *Kamenick Law Office, LLC,* Port Washington. |
| Respondent<br>ATTORNEYS: | On behalf of the plaintiffs-respondents, the cause was submitted on the brief of *Ryan J. Walsh* and *Amy C. Miller* of *Eimer Stahl LLP*, Madison. There was oral argument by *Ryan J. Walsh*. |
| | A nonparty brief was filed by *Robert I. Fassbender* of *Great Lakes Legal Foundation*, Madison,  for National Federation of Independent Business, Wisconsin Restaurant Association, and Restaurant Law Center. |
| | Nonparty briefs were filed by *Matthew M. Fernholz* of *Cramer, Multhauf & Hammes, LLP*, Waukesha, for Waukesha County Business |

Alliance, Oshkosh Chamber of Commerce, Racine Area Manufacturers and Commerce, Wisconsin Grocers Association, Venture Cooperative, and Wisconsin Dairy Alliance..

A nonparty brief was filed by *Natalie A. Harris* of *Baron Harris Healey*, Chicago, Illinois, for Reporters Committee for Freedom of the Press and 13 media organizations.

A nonparty brief was filed by *April Rockstead Barker* of *Schott, Bublitz & Engel S.C.*, Waukesha, for Gannett Co, Inc. d/b/a USA Today Network-Wisconsin, d/b/a Green Bay Press-Gazette, and Doug Schneider.

**2021 WI App 35**

COURT OF APPEALS
DECISION
DATED AND FILED

April 5, 2021

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing.  If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

| Appeal Nos. | 2020AP2081-AC | Cir. Ct. No. 2020CV1389 |
| | 2020AP2103-AC | |
| STATE OF WISCONSIN | | IN COURT OF APPEALS |

---

**2020AP2081-AC**

WISCONSIN MANUFACTURERS AND COMMERCE,
MUSKEGO AREA CHAMBER OF COMMERCE AND
NEW BERLIN CHAMBER OF COMMERCE AND VISITORS BUREAU,

    PLAINTIFFS-RESPONDENTS,

  V.

TONY EVERS, IN HIS OFFICIAL CAPACITY AS GOVERNOR OF WISCONSIN,
KAREN TIMBERLAKE, IN HER OFFICIAL CAPACITY AS INTERIM SECRETARY
OF THE WISCONSIN DEPARTMENT OF HEALTH SERVICES AND
JOEL BRENNAN, IN HIS OFFICIAL CAPACITY AS SECRETARY OF THE
WISCONSIN DEPARTMENT OF ADMINISTRATION,

    DEFENDANTS,

MILWAUKEE JOURNAL SENTINEL,

    INTERVENOR-APPELLANT.

---

**2020AP2103-AC**

WISCONSIN MANUFACTURERS AND COMMERCE,
MUSKEGO AREA CHAMBER OF COMMERCE AND

NEW BERLIN CHAMBER OF COMMERCE AND VISITORS
BUREAU,

    PLAINTIFFS-RESPONDENTS,

  V.

TONY EVERS, IN HIS OFFICIAL CAPACITY AS GOVERNOR OF
WISCONSIN, KAREN TIMBERLAKE, IN HER OFFICIAL CAPACITY
AS INTERIM SECRETARY OF THE WISCONSIN DEPARTMENT OF
HEALTH SERVICES AND JOEL BRENNAN, IN HIS OFFICIAL
CAPACITY AS SECRETARY OF THE WISCONSIN DEPARTMENT OF
ADMINISTRATION,

    DEFENDANTS-APPELLANTS,

MILWAUKEE JOURNAL SENTINEL,

    INTERVENOR.

---

APPEALS from orders of the circuit court for Waukesha County: LLOYD CARTER, Judge. *Reversed and causes remanded with directions*.

Before Fitzpatrick, P.J., Blanchard, and Kloppenburg, JJ.

¶1    KLOPPENBURG, J.  Three trade associations whose members are businesses in Wisconsin—Wisconsin Manufacturers and Commerce (WMC), Muskego Area Chamber of Commerce, and New Berlin Chamber of Commerce and Visitors Bureau (collectively, the Associations)—commenced this declaratory judgment action seeking to enjoin the planned release of certain records by the Wisconsin Department of Health Services in response to public records requests,

including some by the Milwaukee Journal Sentinel.[1]  The complaint alleges that the requested records comprise a list of the names of "all Wisconsin businesses with over twenty-five employees that have had at least two employees test positive for COVID-19 or that have had close case contacts that were investigated by contact tracers" and the numbers of such employees at each business.  The complaint alleges that the information contained in the list is derived from confidential medical records that cannot be disclosed under WIS. STAT. § 146.82.  The complaint further alleges that, if any of the Associations' member businesses are on the list, its release would violate the privacy interests of the member businesses' employees, harm the member businesses' reputations, and result in the unlawful expenditure of WMC's and the member businesses' state tax payments related to the compilation and planned release of the list.  The circuit court denied motions by the State and the Journal Sentinel to dismiss and granted the Associations' motion for a temporary injunction.

---

[1]  We generally refer to the first amended complaint as "the complaint."  The complaint names as defendants Tony Evers, in his official capacity as Governor of Wisconsin, Karen Timberlake, in her official capacity as Interim Secretary of the Wisconsin Department of Health Services (substituted for Andrea Palm, who was replaced as Interim Secretary during the pendency of this appeal), and Joel Brennan, in his official capacity as Secretary of the Wisconsin Department of Administration.  Like the parties, we refer to these defendants collectively as "the State," and to the Department of Health Services individually as "the Department."  The Milwaukee Journal Sentinel ("Journal Sentinel") was allowed to intervene as a defendant.

The Associations designated Waukesha County as the circuit court venue under WIS. STAT. § 801.50(3)(a) (2019-20).  The State and the Journal Sentinel each selected this district as the appellate venue under WIS. STAT. § 752.21(2) (2019-20).

All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

We also acknowledge the informative amicus curae briefs submitted by nonparties with interests in the issues raised in this appeal.

¶2      This court granted separate petitions that were filed by the State and the Journal Sentinel for leave to appeal the circuit court's non-final order denying their motions to dismiss and consolidated the two appeals.[2]  We interpret the applicable statutes and conclude that the Associations' complaint fails to state a claim upon which relief can be granted.  Our conclusion is based on three related but independently sufficient reasons.  These reasons are all primarily rooted in the fact that the Associations fail to show that their member businesses have a legally protectable interest that could justify the relief they seek.  First, an analysis of the plain language of the applicable statutes reveals that the Associations' complaint fails to state a legally protectable interest, thereby rendering declaratory judgment unavailable; this is so even if we assume without deciding that a legally protectable interest may be established purely based on a standing doctrine.  Second, the Associations have failed to allege plausible facts that could establish harm to a purported legally protectable interest.  Third, the Associations cannot overcome the general prohibition in WIS. STAT. § 19.356(1) against a court challenge to the planned release of public records by a governmental authority.  Therefore, the State and the Journal Sentinel are entitled to dismissal of the Associations' complaint.  Accordingly, we reverse and direct the circuit court on remand to dismiss the complaint with prejudice and to vacate the temporary injunction order.

---

[2] The State also appeals the circuit court's non-final order granting the Associations' motion for a temporary injunction.  Because we conclude that the complaint must be dismissed for failure to state a claim, we need not, and do not, address the merits of the injunction order.  *See* ***Barrows v. American Family Ins. Co.***, 2014 WI App 11, ¶9, 352 Wis. 2d 436, 842 N.W.2d 508 (2013) ("An appellate court need not address every issue raised by the parties when one issue is dispositive.").

**BACKGROUND**

¶3     The following background summary consists entirely of allegations and legal conclusions made by the Associations in the complaint. On September 30, 2020, WMC was informed by Secretary Brennan that on October 2, 2020, in response to public records requests, the State planned to release a list of "the names of all Wisconsin businesses with over 25 employees that have had at least two employees test positive for COVID-19 or that have had close case contacts that were investigated by contact tracers" and the numbers of such employees at each business.[3] On October 1, 2020, the Associations filed their initial complaint, and they subsequently filed a first amended complaint, seeking declaratory relief under WIS. STAT. §§ 146.84, 806.04, and 813.01, in the form of an injunction barring planned release of the requested list.

¶4     The Associations allege as follows: some information in the list that the State plans to release comes from "medical diagnostic tests" in individual employees' medical records, which the Associations assert "is protected, confidential health care information that cannot be released without the informed consent of each individual" employee patient under WIS. STAT. § 142.82; releasing the list would permit identification of the employee patients; release of the list of the businesses' names would violate their member businesses' employees' right to privacy, harm their member businesses' reputations, and cause their member

---

[3] In at least one respect, the complaint is inconsistent. It alleges multiple times that the purported unlawful act is the planned release of the list of the names of businesses only. However, there is a single reference alleging that Secretary Brennan informed WMC that the State "planned to release the businesses' names and the number of known or suspected cases of COVID-19." Construing the complaint's factual allegations and its reasonable inferences liberally, as we must, *Kaloti Enterprises, Inc. v. Kellogg Sales Co.*, 2005 WI 111, ¶11, 283 Wis. 2d 555, 699 N.W.2d 205, we consistently refer to the list as containing the names of businesses and the number of employees (meeting the "known or suspected" criteria) at each business.

businesses and WMC pecuniary losses as taxpayers; the Associations are asserting the claims in the complaint "on behalf" of their member businesses.

¶5    The circuit court issued a temporary restraining order enjoining the planned release as to all businesses named on the list regardless of whether a named business is a member of any of the Associations. The Associations moved for a temporary injunction, and the State and the Journal Sentinel each moved to dismiss the complaint. After briefing and oral argument, the court in an oral ruling denied the motions to dismiss and granted the Associations' motion for a temporary injunction, again as to all businesses regardless of whether they are members of the Associations. The court entered orders consistent with its ruling on December 4, 2020.

¶6    On December 23, 2020, and December 28, 2020, the Journal Sentinel and the State respectively filed petitions for leave to appeal the circuit court's order denying their motions to dismiss. By order dated January 20, 2021, this court granted the petitions, consolidated the appeals, and set an expedited schedule for briefing and oral argument. The parties completed briefing on March 12, 2021 and this court convened an oral argument on March 24, 2021.

## DISCUSSION

¶7    The State and the Journal Sentinel appeal the denial of their motions to dismiss the Associations' complaint. The complaint seeks to enjoin the planned release, in response to public records requests, of a list of the names of businesses in Wisconsin with over twenty-five employees that had at least two employees who either tested positive for COVID-19 or had close case contacts investigated by contact tracers and the numbers of such employees at each business. The State and the Journal Sentinel argue that the Associations lack any legal basis to bring this

6

declaratory judgment action and that the public records law bars it. The Associations argue that they may properly bring this declaratory judgment action based on the patient health care records confidentiality law and several standing doctrines.

¶8 As we explain further below, we follow the same analytical approach used by our supreme court in *Moustakis v. DOJ*, 2016 WI 42, ¶3 n.2, ¶5, 368 Wis. 2d 677, 880 N.W.2d 142, and *Voters with Facts v. City of Eau Claire*, 2018 WI 63, ¶4, 382 Wis. 2d 1, 913 N.W.2d 131. Following that approach here, we interpret the applicable statutes and first conclude that the Associations' complaint fails to state a claim upon which relief can be granted because the statutes on which the Associations rely to support their declaratory judgment action "'[do] not give legal recognition to the interest'" they assert. *Moustakis*, 368 Wis. 2d 677, ¶3 n.2 (quoting *Wisconsin's Envt'l Decade, Inc. v. Pub. Serv. Comm'n of Wisconsin*, 69 Wis. 2d 1, 11, 230 N.W.2d 243 (1975), and explaining that, "the question whether [an] interest is legally protected for standing purposes is the same as the question whether plaintiff (assuming his or her factual allegations are true) has a claim on the merits.") (internal quotation marks and quoted source omitted)); *see also Voters with Facts,* 382 Wis. 2d 1, ¶¶4, 26 (not addressing standing and instead analyzing complaint to determine whether it states a claim upon which relief may be granted). Second, we conclude that the Associations fail to show that their member businesses, on behalf of whom the Associations assert their claims, have a legally protectable interest as required to support this declaratory judgment action because it is implausible that, based on the complaint's allegations, the planned release will cause harm to a purported legally protected interest. Third, and relatedly, we conclude that the Associations point to no applicable statutory exception to the prohibition in WIS. STAT. § 19.356(1) against their pre-release challenge to the

7

disclosure of these records in response to public records requests. For each of these reasons, the complaint fails to state a claim upon which relief can be granted and must, therefore, be dismissed.

¶9     We first summarize the standard of review and then proceed with our analysis.

## I.  Standard of Review

¶10     "Upon a motion to dismiss, we accept as true all facts well-pleaded in the complaint and the reasonable inferences therefrom." *Data Key Partners v. Permira Advisers LLC*, 2014 WI 86, ¶19, 356 Wis. 2d 665, 849 N.W.2d 693 (citing *Kaloti Enters., Inc. v. Kellogg Sales Co.*, 2005 WI 111, ¶11, 283 Wis. 2d 555, 699 N.W.2d 205). We do not add facts when analyzing the sufficiency of the complaint, nor do we accept as true any legal conclusions it states. *Id.* The complaint's sufficiency depends on the substantive law that underlies the claim, and the alleged facts related to that substantive law must "plausibly suggest [that the plaintiff is] entitled to relief." *Id.*, ¶31. Whether a complaint adequately pleads a cause of action presents us with a question of law that we resolve independently of the determination by the circuit court. *Hermann v. Town of Delavan*, 215 Wis. 2d 370, 378, 572 N.W.2d 855 (1998).[4]

¶11     This appeal requires that we interpret statutes. *Moustakis*, 368 Wis. 2d 677, ¶3 n.2 (citing cases resolved "on the notion that the statute relied upon by the person seeking review did not give legal recognition to the interest asserted"

_____

[4] Consistent with this standard of review, we do not consider the affidavits submitted by the parties separately from the complaint, including the sample list or lists planned for release provided by the State. Instead, we rely entirely on the complaint's factual allegations and the reasonable inferences arising from those allegations to describe the record or records at issue.

based on statutory interpretation (internal quotation marks and citations omitted)). Statutory interpretation also presents a question of law that we review de novo. *State v. Stewart*, 2018 WI App 41, ¶18, 383 Wis. 2d 546, 916 N.W.2d 188. "'[T]he purpose of statutory interpretation is to determine what the statute means so that it may be given its full, proper, and intended effect.'" *State v. Braunschweig*, 2018 WI 113, ¶12, 384 Wis. 2d 742, 921 N.W.2d 199 (quoting *State ex rel. Kalal v. Circuit Ct. for Dane Cnty.*, 2004 WI 58, ¶45, 271 Wis. 2d 633, 681 N.W.2d 110). When interpreting a statute, our analysis begins with the statutory text. *Kalal*, 271 Wis. 2d 633, ¶45. "Statutory language is given its common, ordinary, and accepted meaning, except that technical or specially-defined words or phrases are given their technical or special definitional meaning." *Id.* In addition, statutory language must be interpreted "in the context in which it is used; not in isolation but as part of a whole; in relation to the language of surrounding or closely-related statutes; and reasonably, to avoid absurd or unreasonable results." *Id.*, ¶46. "If this process of analysis yields a plain, clear statutory meaning, then there is no ambiguity, and the statute is applied according to this ascertainment of its meaning." *Id.* "In interpreting words in a statutory text, we do more than focus on the dictionary definition of each word. Interpretive aids such as the legislative purpose[5] [and] prior Wisconsin case law … help guide our interpretation." *Force ex rel. Welcenbach v. American Family Mut. Ins. Co.*, 2014 WI 82, ¶13, 356 Wis. 2d 582, 850 N.W.2d 866.

## II. Declaratory Judgments Act

¶12    The Associations bring their claims pursuant to the Declaratory Judgments Act, WIS. STAT. § 806.04. Declaratory judgments are available to "[a]ny

---

[5] The legislative purpose of the public records law is discussed later in this opinion.

person … whose rights, status or other legal relations are affected by a statute." Sec. 806.04(2). Under a plain language interpretation, the statute requires that the person must have a "right" or "legal relation" that is affected by "a statute." *See Olson v. Town of Cottage Grove*, 2008 WI 51, ¶¶28, 42, 309 Wis. 2d 365, 749 N.W.2d 211 (declaratory relief appropriate when it will serve useful purpose in clarifying *rights*). We first explain why we conclude that the Associations fail to identify a legally protectable interest to support this declaratory judgment action, and we then explain why we conclude that, even under the statutes that they cite, their allegations of a statutory violation that would purportedly result in harm to their member businesses are not plausible.

## A. Legally Protectable Interest for Declaratory Relief

¶13 It is well established that a declaratory judgment action "is fitting when a controversy is justiciable." *Olson*, 309 Wis. 2d 365, ¶29 (citing *Loy v. Bunderson*, 107 Wis. 2d 400, 410, 320 N.W.2d 175 (1982)). A controversy is justiciable when: (1) a "right is asserted against [a defendant] who has an interest in contesting it"; (2) the controversy is "between persons whose interests are adverse"; (3) the plaintiff has a "legally protectable interest" in the controversy; and (4) the controversy is "ripe for judicial determination." *Olson*, 309 Wis. 2d 365, ¶29 (citing *Loy*, 107 Wis. 2d at 410). "'If all four factors are satisfied, the controversy is 'justiciable,' and it is proper for a court to entertain an action for declaratory judgment.'" *Olson*, 309 Wis. 2d 365, ¶29 (quoting *Miller Brands-Milwaukee, Inc. v. Case*, 162 Wis. 2d 684, 694, 470 N.W.2d 290 (1991)).

¶14 Thus, the Associations must assert at least one "right" satisfying the first factor and at least one "legally protectable interest" satisfying the third factor in order to maintain this declaratory judgment action.

10

¶15 We turn to the statute that the Associations have argued, both in the circuit court and in their appellate briefing, provides the requisite "right" and "legally protectable interest"—the patient health care records confidentiality law, WIS. STAT. §§ 146.82 and 146.84.[6]

¶16 WISCONSIN STAT. § 146.82(1) provides that "[a]ll patient health care records shall remain confidential [and] … may be released only to the persons designated in this section or to other persons with the informed consent of a patient or of a person authorized by the patient…." Subsections (2) and (3) describe those situations in which patient health care records may be released without informed consent, and the State and the Journal Sentinel do not argue that there has been any

---

[6] In their complaint the Associations rely on, or allege violations of, WIS. STAT. §§ 146.81, 146.82(2)(a)20. and (5)(c), 146.84(1)(b)-(bm) and (1)(c), 153.45(1)(b) and 153.50(1)(b), (4), (5) and 943.201(1)(b) as well as 45 CFR § 164.514(b)(1)(2). The Code of Federal Regulations citation is to a portion of the Health Insurance Portability and Accountability Act of 1996 ("HIPAA").

But, in briefing in this court, the Associations do not rely on or cite to ch. 153 or ch. 943. Thus, as to those two chapters, whatever arguments the Associations may have intended to make have been abandoned. *See State v. Ledger*, 175 Wis. 2d 116, 135, 499 N.W.2d 198 (Ct. App. 1993) ("On appeal, issues raised but not briefed or argued are deemed abandoned.").

As to the HIPAA reference, the Associations make a cursory assertion in their appellate brief that release of the list would violate HIPAA, but they make no developed argument regarding how HIPAA could apply to bar release of the requested list. Nor did they advance any developed HIPAA argument at oral argument to this court. We do not consider their citation to federal law further.

The Associations allege in their complaint and assert in their appellate brief that the State's release of the list is unlawful because the release "is not for the purpose of communicable disease surveillance" and therefore it is prohibited under WIS. STAT. § 146.82(5)(c), "regardless of whether the release of records would permit patient identification." Citing the same statute, the Associations allege in their complaint and assert in their appellate brief that "redisclosure of medical records" that the State has received is not allowed. But they make no discernible argument beyond these conclusory assertions and did not develop them at oral argument. Accordingly, we do not consider these undeveloped arguments further. *See Wisconsin Conf. Bd. of Trs. of the United Methodist Church, Inc. v. Culver*, 2001 WI 55, ¶38, 243 Wis. 2d 394, 627 N.W.2d 469 (we do not address arguments that are conclusory and insufficiently developed).

11

pertinent informed consent here. Under WIS. STAT. § 146.84(1)(c), an "individual may bring an action to enjoin any violation of s. 146.82 or 146.83 or to compel compliance with s. 146.82 or 146.83 and may, in the same action, seek damages as provided in this subsection."

¶17     The Associations argue that their member businesses have an interest protected by the patient health care records confidentiality law because WIS. STAT. § 146.84(1)(b) and (bm) provide for damages to "any person injured as a result of the violation" of the confidentiality provisions in WIS. STAT. §§ 146.82 or 146.83, and because their member businesses are "person[s]." As we explain, this argument fails under a plain language interpretation of the pertinent statutory provisions; in the context of the allegations made in the complaint, the statutory language unambiguously leaves no room for the Associations' position.[7]

¶18     WISCONSIN STAT. § 146.84 is titled, "Violations related to patient health care records." As noted, § 146.84(1)(c) states, "An individual may bring an action to enjoin any violation of s. 146.82 or 146.83 or to compel compliance with s. 146.82 or 146.83 and may, in the same action, seek damages as provided in this subsection." Pertinent to this appeal, WIS. STAT. §§ 146.82 and 146.83 protect the

---

[7] In the course of their briefing in this court the Associations conflate their allegations that they make their claims "on behalf of" their members with their arguments that the interests they assert belong to both them and to their member businesses. However, nothing in the Associations' arguments indicates that the Associations have any pertinent interest that is independent from any potential pertinent interests of their member businesses. In any event, our analysis and conclusions apply with equal force to the Associations.

In addition, as we explain below, the Associations argue that their member businesses can sue for damages under WIS. STAT. § 146.84(1)(b) and (bm). However, we are not persuaded that the Associations can prosecute damages claims for harm to others (here, their member businesses), particularly since the Associations do not allege which of their members may be on the list or how damages would be established in these circumstances.

confidentiality of patient health care records and restrict their release. Subsections 146.84(1)(b) and (bm) specify the damages available to "any person" injured by a violation of §§ 146.82 or 146.83.

¶19    Notably, the above-quoted language in WIS. STAT. § 146.84(1)(c) specifies that only "an individual" may sue to enjoin a violation of WIS. STAT. §§ 146.82 or 146.83. The Associations concede that the Associations' member businesses have neither a legally protectable interest nor a method to obtain relief under § 146.84(1)(c) because none of them is "an individual."[8] Specifically, the Associations concede in briefing in this court that they have no "pre-enforcement right of action for injunctive relief" under § 146.84(1)(c).

¶20    Instead, the Associations argue that the Associations themselves may bring this action on behalf of their member businesses because the member businesses have their own shared legally protectable interest. The Associations contend that the legally protectable interest shared by their member businesses is that the member businesses are "persons" that can sue for damages under WIS. STAT. § 146.84(1)(b) and (bm). But the Associations do not argue that their member businesses have the right to sue for damages under those two statutory subparts because the member businesses have their own rights to confidentiality of health care records under WIS. STAT. §§ 146.82 or 146.83. Rather, the Associations argue that their member businesses have this right based on purported violations of the

---

[8] At oral argument the Associations represented that, while their members are mostly businesses, the Associations represent not only businesses but also individuals, including sole proprietorships; the complaint makes similar allegations as to the nature of the Associations' members. However, the complaint alleges that the information to be released is a list of the names of businesses with over twenty-five employees, and the Associations neither allege nor argue that any of those businesses is an "individual" within the meaning of WIS. STAT. § 146.84(1)(c).

13

rights of *the employees* of the member businesses to the confidentiality of *the employees'* health care records under §§ 146.82 or 146.83.

¶21 With that as background regarding the Associations' argument, we are not persuaded that the alleged harm to the reputations of the Associations' member businesses could constitute an injury contemplated by these statutes, because the statutes are focused on individual patients and their health care records (defined in WIS. STAT. § 146.81(3) as "a person who receives health care services from a health care provider"). There is an obvious disconnect between any purported rights of the Associations' member businesses and the protected rights of individual employees of member businesses. We observe that the Associations' argument on this point is not tenable given the fact that the rights of the Associations' member businesses, on the one hand, and the rights of the *employee patients* as specific individuals, on the other hand, are several distinct levels removed from each other.

¶22 Explaining further, WIS. STAT. §§ 146.82 and 146.83 protect the rights of health care patients, *as individual patients*. The Associations fail to explain how the Associations, as particular entities, could pursue a declaratory judgment on behalf of their member businesses in these circumstances without effectively nullifying all of the limiting language referenced in these statutes. *See, e.g.,* § 146.82(1) (declaring that all "patient" health care records are confidential); WIS. STAT. § 146.81(3) (defining "patient" to mean the "person who receives health care"); §§ 146.82(5) and 146.83 (restricting, with limited exceptions, redisclosure of and access to patient health care records based on the consent of or authorization by the "patient."). As we have stated in an analogous situation with respect to WIS. STAT. § 51.30, which involves treatment records, the rights covered by the substantive provisions in §§ 146.82 and 146.83 are those of patients as individuals and concern "the release of [their] confidential information." *See **Milwaukee***

14

*Deputy Sheriff's Ass'n v. City of Wauwatosa*, 2010 WI App 95, 327 Wis. 2d 206, ¶32, 787 N.W.2d 438. Indeed, the Associations' approach would effectively nullify the "legally protectable right" requirement itself. This would be an unreasonable and absurd result, allowing parties to delineate, with no discernable beginning or end point, "legally protectable rights" that diverge from the specific rights that are provided by our legislature and applicable case law. *See Kalal*, 271 Wis. 2d 633, ¶46 (we interpret statutory language in the context in which it is used and "reasonably, to avoid absurd or unreasonable results").

¶23     There is yet another defect in the Associations' reliance on the patient health care records confidentiality law: only "an individual" can sue for injunctive relief. The Associations' argument that their member businesses have a legally protectable interest based on the provisions for damages to injured persons in WIS. STAT. § 146.82(1)(b) and (bm) disregards the provision in § 146.82(1)(c) that only "an individual" can seek the pre-release injunctive relief that the Associations seek here. This excludes the Associations' member businesses.

¶24     The provisions in WIS. STAT. §§ 146.82-146.84 set forth in detail the legal actions that they authorize. Not only do the provisions not create a right to enjoin the planned release of the records for entities such as the Associations' member businesses, they expressly exclude them from that right by categorically identifying who may be a potential plaintiff. The Associations do not explain how the law protects an interest that the law does not permit them to sue to protect. Rather, they seek to rewrite the statute to expand the universe of potential injunction plaintiffs to establish such a legally protected right, which of course this court cannot insert into the statute. *See DOC v. Schwarz*, 2005 WI 34, ¶20, 279 Wis. 2d 223, 693 N.W.2d 703 ("'One of the maxims of statutory construction is that courts should not add words to a statute to give it a certain meaning.'") (quoted source

15

omitted); ***State v. Wiedmeyer***, 2016 WI App 46, ¶13, 370 Wis. 2d 187, 881 N.W.2d 805 ("It is not up to the courts to rewrite the plain words of statutes …."); ***Dawson v. Town of Jackson***, 2011 WI 77, ¶42, 336 Wis. 2d 318, 801 N.W.2d 316 ("We decline to read into the statute words the legislature did not see fit to write.").[9]

¶25    Perhaps recognizing this impediment, the Associations argue in their appellate brief that, even if their member businesses do not have an interest protected by the patient health care records confidentiality law or any other source, they have an interest protected by the Declaratory Judgments Act itself. This argument is counter to the Associations' own concession, elsewhere in their appellate brief and their position at oral argument, that a plaintiff may only "seek a declaratory judgment based on an alleged violation of a statutory or constitutional provision." When the Associations have made it, this concession has been well advised and consistent with authorities we have cited above that require that a party seeking declaratory relief have a legally protectable interest. The contrary position would be such an expansive interpretation of WIS. STAT. § 806.04 that it would effectively read out of existence statutes that limit who can seek pre-release relief regarding records, such as WIS. STAT. § 146.84 discussed above and WIS. STAT. § 19.356(1) discussed below. We may not interpret a statute to render other

_____

[9] We also question whether the information that is alleged to be released constitutes one or more patient health care records protected by WIS. STAT. §§ 146.82 and 146.83. The term "patient health care records" means "all records related to the health of a patient prepared by or under the supervision of a health care provider[.]" WIS. STAT. § 146.81(4). We have ruled that the statutory definition does not encompass information that is merely derived from a record. *See* ***State v. Thompson***, 222 Wis. 2d 179, 188, 585 N.W.2d 905 (Ct. App 1998) ("By its terms, the statute applies to only records... "); ***State v. Straehler***, 2008 WI App 14, ¶¶16, 19-20, 307 Wis. 2d 360, 745 N.W.2d 431 (following ***Thompson*** ruling that § 146.82 "does not reach beyond protection of health care records"). We express no view as to whether some other scenarios might present a close question as to whether the content of released information so closely matches the content of a record that the release of the information is the functional equivalent of release of the record. In any case, we are not presented with a close case here. At a minimum, the statutory definition of patient health care records could not encompass lists of names of businesses accompanied by the numbers at issue here.

statutory language surplusage or to reach such absurd results. *See **Kalal***, 271 Wis. 2d 633, ¶46 ("[s]tatutory language is read where possible to give reasonable effect to every word, in order to avoid surplusage" and to avoid unreasonable or absurd results).

¶26   To repeat, a justiciable controversy requires a legally protectable interest. ***Olson***, 309 Wis. 2d 365, ¶29.  We reject the Associations' inconsistent attempt to use the Declaratory Judgments Act to create an interest that, as explained above, their member businesses do not possess.

¶27   Finally, we address a position that the Associations indistinctly suggested in their appellate brief but stated clearly at oral argument to this court. The argument emphasized at oral argument started from a premise that the Associations have consistently conceded, namely, that to make a valid request under the Declaratory Judgments Act the plaintiff must identify a legally protectable interest.  Under this argument, however, the Associations contended that the legally protectable interest here is satisfied by any one of three doctrines of standing: taxpayer, zone of interests, and judicial policy.  In taking this position at oral argument the Associations did not cite the provisions in WIS. STAT. §§ 146.82 and 146.84 on which they relied in the circuit court and in their appellate briefing.  In any case, this changed position is unavailing.  In themselves, doctrines that can confer standing on a party cannot be substituted for a statutory or constitutional provision that creates a legally protectable interest; to repeat, the Associations conceded in their brief that such a provision is required to provide a legally protectable interest to support a declaratory judgment action.  To quote the Associations' appellate brief, standing is an issue that can arise in the first place only "if a constitutional or statutory provision underlies the claim."

¶28     The Associations' concession is consistent with case law. *See **Krier v. Vilione***, 2009 WI 45, ¶20, 317 Wis. 2d 388, 766 N.W.2d 517 (in order to have standing to assert a claim, "plaintiffs must show that they suffered or were threatened with an injury to an interest that is legally protectable"); ***Moustakis***, 368 Wis. 2d 677, ¶3 n.2 ("'When a plaintiff seeks standing on the basis that an interest is protected by statute, the question whether that interest is legally protected for standing purposes is the same as the question whether plaintiff (assuming his or her factual allegations are true) has a claim on the merits.'") (quoted source omitted). Standing refers to a party's role that enables it to enforce a substantive right, not to a substantive right in itself. While the Associations asserted at oral argument that doctrines of standing do constitute substantive rights, they failed to support that proposition.

¶29     After oral argument, the Associations filed a letter with this court citing to an additional authority regarding standing, namely, the supreme court's newly issued decision in ***Fabick v. Evers***, 2021 WI 28, 396 Wis. 2d 231, 956 N.W.2d 856. We now explain why the Associations' reliance on any of the three standing doctrines—taxpayer standing, zone of interest standing, or judicial policy—as entitling them to seek relief under the Declaratory Judgments Act would fail on its merits.

¶30     *Taxpayer Standing.* The Associations argue that "taxpayer standing alone is sufficient to constitute a legally protectable interest under the [Declaratory Judgments Act]" and, therefore, they are entitled to file a declaratory judgment action simply because they, or at least WMC and some or all of the three

18

Associations' member businesses, are taxpayers.[10] However, as the Associations admit in their appellate brief, and as stated in **Fabick**, in order to establish taxpayer standing a plaintiff must show that the government action that it seeks a court order to enjoin is "unlawful." *See, e.g., **Fabick**,* 2021 WI 28, ¶10 (to assert taxpayer standing a plaintiff must "contest governmental actions leading to an *illegal* expenditure of taxpayer funds" (emphasis added)). As we have explained above, the Associations' complaint fails to make that showing with respect to the planned release of the list.

¶31    *Zone of Interest Standing.* The Associations argue that they are entitled to file a declaratory judgment action because their member businesses are "arguably within the zone of interests that another law seeks to protect," and they point specifically to WIS. STAT. §§ 146.82 and 146.84 as that other law. However, as explained above, those provisions not only fail to provide the Associations' member businesses with a legally protectable interest, the provisions *expressly exclude* them from an interest in the relief the Associations seek on their behalf.

¶32    *Judicial Policy.* The Associations argue that they have standing because of "judicial economy" or "judicial policy" under **McConkey v. Van Hollen**, 2010 WI 57, 326 Wis. 2d 1, 783 N.W.2d 855. In **McConkey**, a question arose about whether the plaintiff had standing to bring the lawsuit. However, our supreme court decided based on judicial economy to address the plaintiff's challenge to a constitutional amendment, a challenge that the court characterized as an "important issue of constitutional law," without regard for whether the plaintiff actually established standing. *Id.*, ¶18. The Associations do not persuade us that judicial

---

[10] The complaint alleges that WMC and some or all of the members of the three Associations are taxpayers.

19

economy or judicial policy require that courts adjudicate the issue they raise here, which, as explained above, implicates no constitutional or other statutory provision at all. Moreover, if we were to adopt the limitless version of judicial economy standing argued by the Associations, the concept of standing as a meaningful requirement that must be satisfied would be effectively eliminated.

¶33    In sum, we conclude that the Associations' complaint fails to state a justiciable claim upon which declaratory relief can be granted.

## B. Plausibility of Allegations for Declaratory Relief

¶34    As stated above, on a motion to dismiss we review the factual allegations in the complaint and inferences from those allegations, so long as the inferences are reasonable. *Data Key*, 356 Wis. 2d 665, ¶19. In addition, our supreme court has told us that the allegations must "plausibly suggest [the plaintiff is] entitled to relief." *Id.*, ¶31. That is, the allegations must cross "the line between possibility and plausibility of entitle[ment] to relief." *Id.*, ¶26 (internal quotation marks and quoted source omitted).

¶35    The Associations request a declaration that the release of the list would be "unlawful." According to the complaint, the release would be unlawful because it would permit the identification of patients (employees). But, as we now explain, the Associations do not allege plausible facts supporting a reasonable inference to that effect; this is a basis to dismiss the complaint quite apart from the analysis above.

¶36    Based on the allegations in ¶¶24 and 25 of the complaint, the State is not planning to include on the list the names of any of the employees of any businesses. Instead, to repeat, the State has informed the Associations that it plans

to release only a list of the names of businesses that have known or suspected cases of COVID-19 at those businesses if the businesses have over twenty-five employees and then at least two employees who tested positive for COVID or had close case contacts that were investigated by contact tracers and the numbers of such employees at each business. Any reasonable view of the complaint shows that release of the list could not violate any law cited by the Associations because the list by itself, considered in isolation, does not permit anyone to reasonably identify any of the employees or "patients."

¶37    As a result, the Associations recognize the need to allege different or additional facts to provide a plausible and valid basis for their claim for relief. Paragraph 31 of the complaint contains the only purported factual basis to support the contention that releasing a list of the name of the business and the number of employees at the business infected with COVID-19 or investigated by contact tracers will permit identification of a patient. There the Associations allege: "Given the relatively small number of employees at any given facility, it would not be difficult for co-workers or community members to discern the identity of the employee or employees who have tested positive for COVID-19." The necessary premise for the Associations' claim is that there is a "relatively small number of employees" for each business. In fact, without this necessary premise, there is no basis in the complaint to support the contention that release of the list would allow identification of the patients. But the complaint alleges no factual basis to show that that premise is plausible. The Associations in their appellate brief acknowledge the speculative nature of the purported basis for their contention by stating, "The planned release *would at least make possible* 'the identification of patients,' since 'co-workers or community members' *conceivably could* uncover 'the identity of the employee or employees who have tested positive for COVID-19' with the

21

information in the State's planned release." (Emphasis added). By the Associations' own acknowledgement, the complaint's allegations do not cross the line that separates "possibility" from "plausibility." *See Data Key*, 356 Wis. 2d 665, ¶26.

¶38 Based on the allegations in the complaint, there are only two data points regarding a business that appears on the list: there are over twenty-five employees at the business and there are at least two positive COVID cases or investigations by contact tracers among the employees. Those two data points fail to reveal the actual size of each business or, more importantly, the chance (expressed as a percentage or otherwise) that someone could figure out from the list who was the "patient" who allegedly had his or her rights under Ch. 146 violated. Such a contention is sheer speculation.

¶39 In sum, it is far from "plausible" that the release of the list could "permit the identification of the patient" under the circumstances alleged in the complaint so as to render the release a violation of a legally protectable interest. Accordingly, we conclude that the Associations' allegations do not "plausibly suggest a violation of applicable law." *Data Key*, 356 Wis. 2d 665, ¶21. Because the harms alleged in the complaint—to the Associations' members businesses reputations, to the privacy interests of the member businesses' employees, and to WMC and the member businesses as taxpayers—would all allegedly arise from the unlawful release of the list, in light of our conclusion that the complaint does not plausibly allege that the release of the list would be unlawful, the complaint fails to state a claim upon which relief can be granted.

### III. Public Records Law

¶40 The State and the Journal Sentinel assert that, in the alternative, the Associations' complaint fails to state a claim under the public records law. We agree, based in large part on related analysis set forth above.

¶41 The Associations do not dispute that the requested records that they ask the circuit court to enjoin from planned release are maintained by the Department of Health Services. The release of records maintained by a governmental authority is governed by WIS. STAT. §§ 19.32-37. *See* § 19.32(2) (defining "record" as "any material … which has been created or is being kept by an authority"); § 19.32(1) (defining "authority" as including "a state or local office, elected official, agency"); § 19.35(1)(a) and (b) (providing that any requestor may inspect and receive copies of a record "[e]xcept as otherwise provided by law").

¶42 Under WIS. STAT. § 19.356(1):

> Except as authorized in this section or as otherwise provided by statute, no authority is required to notify a record subject prior to providing to a requester access to a record containing information pertaining to that record subject, and no person is entitled to judicial review of the decision of an authority to provide a requester with access to a record.

¶43 The legislature has provided that the public policy underlying the public records law is as follows: "[I]t is ... the public policy of this state that all persons are entitled to the greatest possible information regarding the affairs of government and the official acts of those officers and employees who represent them." WIS. STAT. § 19.31. As our supreme court has explained:

> In light of this policy, the legislature has stated that the public records law "shall be construed in every instance with a presumption of complete public access, consistent with the conduct of governmental business. The denial of

23

> public access generally is contrary to the public interest, and only in an exceptional case may access be denied." WIS. STAT. § 19.31.
>
> Thus, the exceptions in WIS. STAT. § 19.356(2)(a)1., 2., and 3. are the only instances in which a record subject has a statutory right to receive notice and seek pre-release judicial review of a response to a public records request.

*Moustakis*, 368 Wis. 2d 677, ¶¶23, 28; *cf., Democratic Party of Wisconsin v. DOJ*, 2016 WI 100, ¶11, 372 Wis. 2d 460, 888 N.W.2d 584 ("If a statutory or common law exception applies, the analysis ends and the records will not be disclosed.").

¶44    The Associations concede that the exceptions in WIS. STAT. § 19.356(2)(a) do not apply to them or their claim. In addition, for the reasons explained in the preceding section, neither does the prefatory "except as otherwise provided by statute" language apply to their claim: the Association has failed to identify a statute that could apply here. This defeats the only developed arguments presented by the Associations on this issue, aside from what amounts to a policy position that we now address.

¶45    The Associations express disbelief that they could have no remedy under the statutes to prevent the release of records that they allege might contain the names of some number of their member businesses with over twenty-five employees whose employees have tested positive for COVID-19 or been subject to contract tracing related to the illness. Yet, the legislature has also prohibited the possibility of the type of relief from a public records release that is sought here for other categories of persons who submit that they will be harmed by a records release. *See Moustakis*, 368 Wis. 2d 677, ¶5 (ruling that a district attorney as an elected official is not entitled under the public records law to challenge the release of records pertaining to the district attorney prior to the release). And, as the Journal Sentinel points out in its reply, the legislature has explicitly prohibited the possibility of any

remedy, regardless of the merits or degrees of injury, for other categories of claims by enacting statutes of limitation, statutes providing for official and recreational immunity, and the like. *See, e.g.,* WIS. STAT. §§ 893.80, 893.82, 895.52. The Associations' recourse is not to urge a court to disregard the narrowly drawn restrictions that the legislature has imposed on challenges to the planned release of records to effectuate the legislature's express policy in favor of the presumption that all governmental records are open to the public, *see* WIS. STAT. § 19.31, by espousing a statutory interpretation that diametrically contradicts the legislative limitations in both WIS. STAT. §§ 146.84 and 19.356 and the legislative policy stated in §§ 19.31 and 19.356. Rather, the Associations' only recourse would be to ask the legislature to change that policy.

## CONCLUSION

¶46    For all of these reasons, we reverse the decision of the circuit court denying the motions of the State and the Journal Sentinel to dismiss the first amended complaint based on a failure to state a claim upon which relief can be granted, and we remand to the circuit court with directions to dismiss the first amended complaint with prejudice and to vacate the temporary injunction order.[11]

> *By the Court.*—Orders reversed and causes remanded with directions.

---

[11] The Associations have moved in the circuit court for leave to file a second amended complaint adding two individual plaintiffs who allege that they tested positive and are employees of entities that would be listed in the records release, and that motion has been held in abeyance pending this appeal. Upon remand, the circuit court may consider, consistent with any applicable discussion in this opinion, the propriety of such a second amended complaint by the two proposed plaintiffs after the dismissal of the first amended complaint filed by the Associations.

25