TRI-STATE HOME IMPROVEMENT COMPANY, INC., Plaintiff-Appellant, v. MANSAVAGE, and another, Defendants-Respondents.

*No. 75–230. Submitted on briefs March 30 1977.—*
*Decided May 17, 1977.*
(Also reported in 253 N. W. 2d 474.)

650

652

For the appellant the cause was submitted on the briefs of *Robert A. Levine* and *Levine & Levine* of Milwaukee.

For the respondents the cause was submitted on the brief of *Borgelt, Powell, Peterson & Frauen,* attorneys, and *Willard P. Techmeier,* of counsel, all of Milwaukee.

BEILFUSS, C. J.   Three basic issues are presented:

(1) Did the plaintiff substantially perform the contract?

(2) Was it an abuse of discretion to deny the plaintiff's motion to amend its complaint so as to state a cause of action for quantum meruit?

(3) Did the proof establish violations of the provisions of Ch. Ag 110, 1 Wis. Adm. Code, dealing with unfair practices in home improvement contracts?

On April 29, 1972, the defendants-respondents, Dennis and Bridget Mansavage entered into a written home improvement contract with the plaintiff-appellant, Tri-State Home Improvement Company, Inc., through its agent, David Kahn. The contract price was $2,500. Included in the contract provisions was the following:

## "SPECIFICATIONS

"Reside outer wall with Genuine U. S. aluminum color white use in gabels classic Jade. Recover overhangs and peaks and on the side trim, check all sills & casings, replace where ever needed, caulk & seal around windows and doors, install aluminum door. This job is guaranteed for labor and material."

After one outer side of the defendants' home had been sided, a dispute arose over the type of aluminum siding used. The siding put on was hollow. The plaintiff, Tri-State, claimed the hollow siding complied with the contract, but to avoid the dispute it removed the hollow siding and replaced it with insulated backer board siding.

Another dispute developed concerning the overhangs, peaks and side trim, the replacement of sills and casings and the caulking and sealing around the doors and windows. This dispute was unresolved. Tri-State's position was that it had completed the contract as of May 30, 1972. The Mansavages maintained the contract had not been completed and relied on the contract provision that payment was not due until thirty days after the completion of the contract. Tri-State demanded payment. Mansavages refused to make any payment at all.

The contract contained a notice of lien rights provision. In September of 1972, Tri-State filed its Notice of Lien, commenced this action in November of 1972, and filed a Notice of Lis Pendens. An amended complaint was filed in December of 1972. The Mansavages filed an answer and counterclaim in March of 1973. Subsequently they

retained different counsel and amended their answer and counterclaim. The amended answer affirmatively alleged the contract had not been performed and listed the deficiencies set forth above. The counterclaim alleged violations of the Administrative Code by Tri-State in representations made to induce the contract and deficiencies of the contract. The matter was tried to the court without a jury in October of 1974. A judgment dismissing Tri-State's complaint upon its merits was entered April 4, 1975; and a judgment dismissing the counterclaim of the Mansavages was entered July 3, 1975.

Tri-State argues that it fully complied with all terms of the contract and is entitled to lien foreclosure judgment. On review, this court will sustain findings of fact unless they are against the great weight and clear preponderance of the evidence.[1] " ' "A trial court's finding of fact made on conflicting evidence should not be set aside if a judicial mind could, on due consideration of the evidence as a whole, reasonably have reached that conclusion. . . ." ' " *Precision Service Co. v. Schill*, 60 Wis.2d 346, 348, 210 N.W.2d 706 (1973). The court found that Tri-State unjustifiably refused to complete the contract with respect to the uncovered overhang. It also found that work on a third floor windowsill was not in conformity with the contract, and that all the windows were not caulked properly. Testimony that windows were not properly repaired and that overhangs were not covered was offered. This testimony supports the finding that Tri-State did not fully comply with the contract. The findings were not against the great weight and clear preponderance of the evidence and must be upheld.

[1] *Kleinstick v. Daleiden,* 71 Wis.2d 432, 442–43, 238 N.W.2d 714 (1976).

The court found the damages for the failure to perform the contract were $508.75. Tri-State contends that this figure is not supported by the record. This figure was supplied by David Kahn, a Tri-State employee. It was Kahn who originally estimated the $2,500 contract cost of siding and repairing the Mansavage residence. He stated that $508.75 would be the 1972 cost of covering or repairing those items that the Mansavages contended should have been covered or repaired pursuant to the contract. The court found that the contract provided the disputed items were to be covered or repaired.

"The general principle regarding the measure of damages for defects and omissions in the performance of building contracts is simply that the party is entitled to have what he contracts for or its equivalent. . . [T]he equivalent is sometimes held to be the cost of making the work conform to the contract." *De Sombre v. Bickel,* 18 Wis.2d 390, 398, 118 N.W.2d 868 (1963).

A finding that $508.75 was the amount necessary to complete the repairs that should have been made under the contract, but were not, is not against the great weight and clear preponderance of the evidence.

Tri-State further contends that it is entitled to recover under the doctrine of substantial performance.

"The doctrine of substantial performance is an equitable doctrine and constitutes an exception in building contracts to the general rule requiring complete performance of the contract. . . . [T]he contractor must make a good faith effort to perform and substantially perform his agreement . . . .

"[S]ubstantial performance should be granted in cases of incompleteness only when such details are inconsider-

able and not the fault of the contractor." *Kreyer v. Driscoll*, 39 Wis.2d 540, 544–45, 159 N.W.2d 680 (1968).

The trial court made no specific finding concerning whether Tri-State substantially performed the contract. However, implicit in a finding that Tri-State did not perform the contract is a finding that it did not substantially perform. We presume the trial court was aware that if Tri-State had substantially performed it was entitled to recover on the contract.

Reviewing the record, it would be difficult to conclude that those areas not covered by siding or repaired were inconsiderable details. Moreover, the failure to perform was the fault of the contractor. The cost of the additional repairs was $508.75, one-fifth of the total contract price. We cannot hold as a matter of law that performing four-fifths of the contract was substantial compliance. The plaintiff's defaults were not inconsiderable. We agree that the contract was not substantially performed. Without substantial performance of the contract it follows that judgment of foreclosure of the lien could not be granted and the complaint was properly dismissed as to that cause of action.

On the second day of trial, Tri-State attempted to amend its pleadings and proceed with an alternative cause of action based upon quantum meruit. The motion to amend was denied. The trial court was of the opinion the motion came too late. Sec. 269.44, Stats.,[2] was the

---

[2] "269.44 *Amendments of processes, pleadings and proceedings.* The court may, at any stage of any action or special proceeding before or after judgment, in furtherance of justice and upon such terms as may be just, amend any process, pleading or proceeding, notwithstanding it may change the action from one at law to one of equity, or from one on contract to one in tort, or vice-versa; provided, the amended pleading states a cause of action arising out of the contract, transaction or occurrence or is connected with the subject of the action upon which the original pleading is based."

controlling statute concerning amendment of pleadings at the time of this trial. The issue before this court is whether the trial court abused its discretion in refusing to allow an amendment.

The well-known rule on Sec. 269.44, Stats., is that it "should be liberally construed to permit the amendment of the pleadings so as to present the entire controversy providing the amendment does not unfairly deprive the opposing party of timely opportunity to meet the issue created by the amendment." *Wipfli v. Martin,* 34 Wis.2d 169, 174, 148 N.W.2d 674 (1967).

In *Wipfli* the trial court had denied a motion to amend a complaint on the day before trial. In discussing whether the trial court abused its discretion in not allowing the amendment, this court stated:

"Lack of timeliness of the motion in this case depends upon the prejudice or unfairness to the defendant in being required to go to trial the next day. If, in fact, the amendment would have confronted Fidelity with a new issue of which it was unaware or upon which it was unprepared, the trial court could have denied the motion to amend, as it did here, or grant the motion and a continuance for such time as reasonably necessary to investigate and defend the issue.

"The facts as they appear in the record before us do not reveal that Fidelity was surprised by a new issue or that it was in any manner prejudiced in going to trial the next day on the negligence and damage issues raised by the complaint and answer." Id. at 174–75.

The amendment, adding a cause of action for quantum meruit, did not surprise the defendants. From the outset it was clear that Tri-State was claiming that it furnished services and material and that the Mansavages did not pay tfor them.

While we do not believe the contractor, Tri-State, should be able to recover on the contract under the doc-

trine of substantial compliance, it should not in equity be denied some compensation for the improvements. To deny all compensation would result in a windfall for the defendants. The contractor should have a cause of action in quantum meruit. The right of the contractor was fully set forth in *Kreyer v. Driscoll,* 39 Wis.2d 540, 546–47, 159 N.W.2d 680 (1968). We quote from that opinion:

"In *Valentine v. Patrick Warren Construction Co.* (1953), 263 Wis. 143, 56 N.W.2d 860, the rule was laid down in respect to restitution in favor of a plaintiff who is in default. In this case we adopted the rule found in Restatement, 2 *Contracts,* pp. 623, 624, sec. 357(1), which provides that where a defendant justifiably refuses to perform his contract because of the plaintiff's breach but the plaintiff has rendered part performance which is of a net benefit to the defendant, the plaintiff can get judgment with some exceptions for the amount of such benefit in excess of the harm he has caused the defendant by his breach but in no case exceeding a ratable proportion of the agreed compensation. Under this rule, the defendant with knowledge of the plaintiff's breach must assent to the rendition of the part performance or accept the benefit of it. This is what the trial court found the Driscolls did by not rescinding the contract.

"Illustration 3 to this rule is on all fours with the facts of this case and the computation made by the trial court is the computation which would be made under this section. The same rule as stated in 5 Williston, *Contracts* (rev. ed.), pp. 4140–4144, secs. 1482, 1483, is that the true measure of quasi-contractual recovery where the performance is incomplete but readily remedial is the unpaid contract price less the cost of completion and other additional harm to the defendant except that it must never exceed the benefit actually received by the defendant. This is the net benefit by which the defendant is enriched."

The Mansavages, however, assert that granting the motion to amend would have seriously prejudiced them.

The Mansavages had made a timely demand for a jury trial. Because the cause of action was for a lien foreclosure, an equitable action,[3] the trial court denied the motion for a jury trial. A cause of action for quantum meruit, while equitable in nature, is an action at law.

In analyzing sec. 805.01, Stats.,[4] one commentator, citing *McLennan v. Church,* 163 Wis. 411, 158 N.W. 73 (1916), noted—"Wisconsin has steadfastly adhered to the view that the court sitting without a jury is authorized to grant purely legal relief as long as the equitable action was commenced in good faith."[5]

In *Fullerton Lumber Co. v. Torborg,* 275 Wis. 478, 485, 80 N.W.2d 461 (1957), this court stated: "It is well established in this state that if a court of equity takes jurisdiction of a matter, it will retain jurisdiction for the purpose of doing complete justice between the parties, and will in a proper case, not only extend its equitable remedy, but will also permit the recovery of damages."

Just as a legal counterclaim in an equitable action does not necessarily entitle the counterclaimant to a jury trial, *Mortgage Associates v. Monona Shores,* 47 Wis.2d 171, 176–78, 177 N.W.2d 340 (1970), an amendment by a plaintiff from equity to law does not necessarily entitle the defendant to a jury trial, if the equitable action was brought in good faith. The amendment in this case would not have entitled the Mansavages to a jury trial

---

[3] *Sid Grinker Co. v. Craighead,* 33 Wis.2d 42, 44, 146 N.W.2d 478 (1966).

[4] Sec. 805.01, Stats., is the successor to sec. 270.01. Sec. 270.01 was the controlling law at the time of this dispute. Sec. 805.01 did not change the right to jury trial. W. Harvey, *Rules of Civil Procedure,* sec. 5001 (1975).

[5] Graczyk, *The New Wisconsin Rules of Civil Procedure,* chs. 805–807, 59 Marq. L. Rev. 671, 672 (1976).

as a matter of law, thus we believe the trial court abused its discretion in denying the motion to amend.[6]

Because we are of the opinion the trial court legally abused its discretion in refusing to permit the amendment, the matter is remanded for a new trial. However, the plaintiff's right to recovery shall be limited to a cause of action upon the theory of quantum meruit. For an orderly disposition of the matter, the plaintiff should serve and file an amended complaint within twenty days of the remittitur.

On cross-appeal the Mansavages argue that Tri-State violated a number of provisions of the Wisconsin Administrative Code, Ch. AG, sec. 110.[7] The trial court found that ch. AG, sec. 110 had not been violated.

---

[6] *Wipfli v. Martin*, 34 Wis.2d 169, 148 N.W.2d 674 (1967).

[7] The following sections which we discuss are some of those alleged to have been violated. These sections were in effect at the time of the contract, but have been repealed and replaced.

"Ag 110.01 *Prohibited trade practices.* All persons, firms and corporations, their officers, representatives, agents and employes, in selling, installing or servicing roofing, siding, windows, doors, awnings, heating and air conditioning equipment, water softeners and purifiers, fall-out and other protective shelters, fire protection devices or any other permanent installation or improvement attached or to be attached, whether by buyer or seller, to an already existing home, non-commercial structure or building shall cease and desist from engaging in any unfair methods of competition or trade practices, and particularly the following:

"(1) *Model Home Representations.* To use any false or deceptive inducements or to misrepresent or falsely state to a prospective customer that his dwelling or building is to serve as a 'prospective buyer' lure, or 'model home' or 'advertising job' and that he will be paid a commission or other compensation for any other sales the seller may make in the vicinity or within a specified distance from the customer's location, and in that way lead the customer to believe that the cost of the improvement or installation will be fully paid or greatly reduced by reason thereof.

". . .

The Mansavages contend that sec. 110.01, AG was violated. This section prohibited false statements that a home would be used as a "model" and that using it as a model would reduce the cost of the improvement. The trial court found that any promises made "did not induce the defendants to enter into the agreement. The contract price for the work was Two Thousand Five Hundred Dollars ($2,500.00)." This finding was not against the great weight and clear preponderance of the evidence. The essence of this finding was that the promises of Tri-State did not lead the Mansavages to believe the cost of their home would be less than $2,500.

"(3) *Bait Selling.* . . . (d) To substitute any product or material or to deliver or install or apply a product different from that represented by any sample, illustration or model.

". . .

"(7) *Guarantee.* To give any guarantee that is not specific, clear and definite or which the seller is unable to comply with, or to misrepresent that the manufacturer or anyone else is the guarantor of the product, or to fail to furnish the purchaser with a written copy of such guarantee."

"Ag 110.02 *Contract requirements.* All contracts and agreements in writing subscribed by the buyer for the sale or installation of any product or materials, as provided in section Ag 110.01, which obligate the buyer for the payment of money, shall clearly set forth all representations made by the seller and particularly the following:

". . .

"(4) The contract shall clearly and separately spell out and state, wherever applicable, the size, model, capacity and year of the product, and type, weight, grade, quantity and quality of materials, including the brand name if so represented, as well as all the services and functions the product or material was represented to perform."

*See generally,* Jeffries, *Protection for Consumers Against Unfair and Deceptive Business,* 57 Marq. L. Rev. 559, 572–79 (1974).

The Mansavages also contend that sec. 110.01(3)(d), AG, which prohibited substituting material different than the sample shown, was violated. There was conflicting testimony on what kind of siding was originally shown to the Mansavages. The court found that there was no substitution and, again, this finding is not against the great weight and clear preponderance of the evidence.

Sec. 110.01(7), AG, proscribed a guarantee that was not clear and definite. The guarantee set forth in the contract provided that "[t]his job is guaranteed for labor and material." We cannot hold, as a matter of law, this general guarantee did not comply with sec. 110.01(7), AG. Nor that Tri-State failed to comply with sec. 110.02(4), AG, which required a home improvement contractor to clearly and separately spell out and state the type, weight, grade, quantity and quality of materials. The contract only stated that Tri-State would use "Genuine U. S. Aluminum." This we believe is sufficient to comply with the AG order.

The trial court found that the Mansavages failed to establish that "they sustained any pecuniary loss by reason of the alleged plaintiff's violation of Chapter AG 110 of the Wisconsin Administrative Code." At trial, Leonard Mattes testified the Mansavage home was worth $8,900 in March of 1973, but because of the declining neighborhood was only worth $7,000 at the time of trial. However, Mattes also testified that without the aluminum siding the house would have been worth $5,500.

The Mansavages present other arguments directed at showing there was a violation of the department's orders. However, we are of the opinion the trial court's findings

of fact are not against the great weight and clear preponderance of the evidence and that no error of law was committed in construing the contract and the AG rule, and that the counterclaim was properly dismissed.

Tri-State argues that it should have been allowed costs on the dismissal of the counterclaim. It appropriately notes that sec. 271.035, Stats., provides that costs in favor of the successful party shall be in the discretion of the court. The court did not allow costs—it did not abuse its discretion.

The judgment of April 4, 1975, insofar as it dismissed the complaint for a mechanic's lien foreclosure, should be affirmed; insofar as the plaintiff was denied the right to amend its complaint to state a cause of action upon the theory of quantum meruit, the judgment is reversed and plaintiff awarded a new trial. The judgment of July 3, 1975, dismissing the defendants' counterclaim, should be affirmed.

*By the Court.*—Judgments affirmed in part and reversed in part, and cause remanded for further proceedings not inconsistent with this opinion.