# SUPREME COURT OF WISCONSIN

| | |
|---|---|
| CASE NO.: | 2020AP2081-AC & 2020AP2103-AC |

| | |
|---|---|
| COMPLETE TITLE: | Wisconsin Manufacturers and Commerce, Muskego Area Chamber of Commerce and New Berlin Chamber of Commerce and Visitors Bureau, |
| |       Plaintiffs-Respondents-Petitioners, |
| |      v. |
| | Tony Evers, in his official capacity as Governor of Wisconsin, Karen Timberlake, in her official capacity as Interim Secretary of the Wisconsin Department of Health Services and Joel Brennan, in his official capacity as Secretary of the Wisconsin Department of Administration, |
| |       Defendants, |
| | Milwaukee Journal Sentinel, |
| |       Intervenor-Appellant. |

REVIEW OF DECISION OF THE COURT OF APPEALS
Reported at 398 Wis. 2d 164,960 N.W.2d 442
PDC No:2021 WI App 35 - Published

| | |
|---|---|
| OPINION FILED: | June 7, 2022 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | February 14, 2022 |

| | |
|---|---|
| SOURCE OF APPEAL: | |
|   COURT: | Circuit |
|   COUNTY: | Waukesha |
|   JUDGE: | Lloyd V. Carter |

JUSTICES:
DALLET, J., delivered the majority opinion of the court, in which ANN WALSH BRADLEY, HAGEDORN, and KAROFSKY JJ., joined. ZIEGLER, C.J., filed a dissenting opinion, in which ROGGENSACK, and REBECCA GRASSL BRADLEY, JJ., joined.
NOT PARTICIPATING:

ATTORNEYS:

    For the plaintiffs-respondents-petitioners there were briefs filed by *Ryan J. Walsh, Amy C. Miller, Scott E. Rosenow*

and *Eimer Stahl LLP*, Madison and *WMC Litigation Center*, Madison. There was an oral argument by *Scott E. Rosenow*.

For the intervenor-appellant there was a brief by *Thomas C. Kamenick* and the *Wisconsin Transparency Project*, Port Washington and *Kamenick Law Office, LLC*, Port Washington. There was an oral argument by *Thomas C. Kamenick*.

For the defendants there was a brief filed by *Clayton P. Kawski* and *Anthony D. Russomanno*, assistant attorneys general, with whom on the brief was *Joshua L. Kaul*, attorney general. There was an oral argument by *Clayton P. Kawski*, assistant attorney general.

**2022 WI 38**

NOTICE

**This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.**

No. 2020AP2081-AC & 2020AP2103-AC
(L.C. No. 2020CV1389)

| STATE OF WISCONSIN | : | IN SUPREME COURT |
|---|---|---|

Wisconsin Manufacturers and Commerce, Muskego Area Chamber of Commerce and New Berlin Chamber of Commerce and Visitors Bureau,

        Plaintiffs-Respondents-Petitioners,

        v.

Tony Evers, in his official capacity as Governor of Wisconsin, Karen Timberlake, in her official capacity as Interim Secretary of the Wisconsin Department of Health Services and Joel Brennan, in his official capacity as Secretary of the Wisconsin Department of Administration,

        Defendants,

Milwaukee Journal Sentinel,

        Intervenor-Appellant.

**FILED**

**JUN 7, 2022**

Sheila T. Reiff
Clerk of Supreme Court

DALLET, J., delivered the majority opinion of the Court, in which ANN WALSH BRADLEY, HAGEDORN, and KAROFSKY, JJ., joined. ZIEGLER, C.J., filed a dissenting opinion, in which ROGGENSACK, and REBECCA GRASSL BRADLEY, JJ., joined.

REVIEW of a decision of the Court of Appeals. *Affirmed.*

¶1  REBECCA  FRANK  DALLET,  J.  The  Milwaukee  Journal Sentinel  made  public  records  requests  to  the  Department  of Health  Services  (DHS)  for  certain  documents  related  to  the COVID-19 pandemic.  After learning that DHS planned to respond by releasing a list of "all Wisconsin businesses with over 25 employees that have had at least two employees test positive for COVID-19  or  that  have  had  close  case  contacts  that  were investigated by contact tracers" and the number of such tests or contacts at each business, Wisconsin Manufacturers and Commerce and two other trade associations (WMC)[1] brought an action seeking declaratory  and  injunctive  relief  to  stop  the  release.  The issue is whether the public records law's general prohibition on pre-release  judicial  review  of  decisions  to  provide  access  to public records bars WMC's claims.[2]  See Wis. Stat. § 19.356(1) (2019-20).[3]  We conclude that it does, and therefore affirm the court of appeals' decision.

---

[1] The associations are the Muskego Area Chamber of Commerce and the New Berlin Chamber of Commerce and Visitors Bureau.  For ease of reference, we refer to all three groups collectively as "WMC."

[2] The  parties'  briefs  also  focused  on  the  question  of whether  WMC  has  standing  to  assert  its  claims.  Although standing is relevant to whether a party may assert a declaratory judgment  claim,  see  Fabick v. Evers,  2021 WI 28,  ¶11,  396 Wis. 2d 231,  956 N.W.2d 856,  we  resolve  this  case  on  other grounds  and  therefore  assume  without  deciding  that  WMC  has standing.  See Voters with Facts v. City of Eau Claire, 2018 WI 63, ¶26, 382 Wis. 2d 1, 913 N.W.2d 131 (assuming plaintiffs had standing  to  assert  their  declaratory  judgment  claims  while concluding that the complaint failed to state a claim).

[3] All subsequent references to the Wisconsin Statutes are to the 2019-20 version.

I

¶2   As part of its response to the COVID-19 pandemic, DHS collected data and compiled a list of Wisconsin businesses with more than 25 employees that had two or more employees test positive for COVID-19 or that had close contacts investigated by contact tracers.[4]   The list includes the number of positive tests or contacts at those businesses.   Before releasing the list in response to the Journal Sentinel's public-records requests, DHS notified WMC of its plans.   This was a courtesy, as the parties agree that DHS was not statutorily required to notify WMC before releasing the records.

¶3   The day before the planned release, WMC filed suit in circuit court,[5] naming DHS and a number of state officials as

---

[4] The information contained in these records was apparently compiled based on data DHS obtained to investigate and report on public-health issues pursuant to its duties under Wis. Stat. chs. 250 and 252.   Those duties include "establish[ing] and maintain[ing] surveillance activities sufficient to detect any occurrence of acute, communicable or chronic diseases," "analyz[ing] occurrences, trends and patterns of" disease, and "distribut[ing] information based on the analyses."   Wis. Stat. § 250.04(3)(a), (b)1.   DHS may obtain data in a number of different ways, including from local health officers or health care providers.   See Wis. Stat. § 252.05(1); Wis. Admin. Code DHS § 145.04(1)(a) (June 2018).   Laboratories are also required to report "specimen results that indicate that an individual providing the specimen has a communicable disease."   § 252.05(2).   WMC does not challenge DHS's data-collection methods.

[5] The Honorable Lloyd V. Carter of the Waukesha County Circuit Court presided.

2

defendants.[6]   WMC alleged that releasing the list would violate the patient health care records statutes, Wis. Stat. §§ 146.81 and 146.82, in two ways: (1) it would allow for the identification of its member businesses' employees; and (2) the list is derived "from diagnostic test results and the records of contact tracers investigating COVID-19" and therefore must be kept confidential as a patient health care record. Additionally, WMC asserted that the public records law's common-law balancing test weighs against disclosure, because releasing the list will injure the reputations of its member businesses and violate employees' privacy rights.   Nevertheless, WMC did not bring its case directly under either the patient health care records statutes or the public records law.   Instead, it brought its claims pursuant to the Declaratory Judgments Act, Wis. Stat. § 806.04, requesting a declaration that DHS's planned release would be unlawful under either the patient health care records statutes or the public records law.   See Wis. Stat. § 806.04(2) (authorizing a party to "obtain a declaration of rights, status or other legal relations" under a statute).   WMC also sought an injunction barring the records' release.

---

[6] Specifically, the complaint named Governor Evers, Andrea Palm (then the Secretary-Designee of DHS), and Joel Brennan (the Secretary of the Department of Administration).   While this case was on appeal, Karen Timberlake replaced Palm as the Secretary-Designee of DHS, and, as a result, was substituted for Palm as a party.   We refer to these defendants collectively (along with DHS) as the State.

¶4    The circuit court granted a temporary restraining order halting the planned release of the list.  The State then moved to dismiss, as did the Journal Sentinel (which the circuit court had allowed to intervene).  They argued that WMC lacked standing and that its action was barred by Wis. Stat. § 19.356(1), which generally prohibits pre-release judicial review of a decision to provide a requester with access to public records unless "otherwise provided by statute."  The circuit court denied the motions, concluding that § 19.356(1) did not apply to WMC's claims.  The circuit court also held that WMC had standing to challenge the release of the records under the Declaratory Judgments Act because it fell within the "zone of interests" protected by the patient health care records statutes.  Additionally, the circuit court granted WMC's motion for a temporary injunction preventing DHS from releasing the records.

¶5    The court of appeals granted the State's and the Journal Sentinel's petitions for leave to appeal the order denying their motions to dismiss[7] and reversed the circuit court's decision.  Wis. Mfrs. & Com. v. Evers, 2021 WI App 35,

---

[7] Shortly after the circuit court denied the State and Journal Sentinel's motions to dismiss, WMC filed a motion for leave to file an amended complaint.  Before the circuit court ruled on that motion, the State and Journal Sentinel filed their petitions for leave to file an interlocutory appeal.  The court of appeals granted those petitions, and WMC has not challenged that decision.  WMC's motion to amend remains pending in the circuit court and, on remand, that court must address whether to grant the motion.

4

398 Wis. 2d 164, 960 N.W.2d 442. The court of appeals held that WMC failed to state a claim upon which relief could be granted because "the statutes on which [WMC] rel[ies] to support [its] declaratory judgment action 'do not give legal recognition to the interest' [it] assert[s]." Id., ¶8 (alteration omitted) (quoting Moustakis v. DOJ, 2016 WI 42, ¶3 n.2, 368 Wis. 2d 677, 880 N.W.2d 142). Relatedly, the court of appeals rejected the argument that WMC had such a legally protected interest under various standing doctrines. See id., ¶27. The court of appeals also analyzed the patient health records statutes, noting WMC's concession that Wis. Stat. § 146.84(1)(c) provides a cause of action only to "an individual," not to WMC or its member businesses. Id., ¶¶18-19.

¶6 WMC petitioned for review, challenging the merits of the court of appeals' decision. It did not seek review of the court of appeals' decision granting the State's and Journal Sentinel's petitions for leave to file an interlocutory appeal. We granted WMC's petition.

II

¶7 We review de novo a lower court's decision to grant or deny a motion to dismiss. State ex rel. City of Waukesha v. City of Waukesha Bd. of Rev., 2021 WI 89, ¶11, 399 Wis. 2d 696, 967 N.W.2d 460. In doing so, we take as true all well-pleaded factual allegations, but do not accept legal conclusions as true. Data Key Partners v. Permira Advisers LLC, 2014 WI 86, ¶19, 356 Wis. 2d 665, 849 N.W.2d 693. Our analysis also

requires us to interpret statutes.  Statutory interpretation is a question of law we review de novo.  City of Waukesha, 399 Wis. 2d 696, ¶12.

### III

### A

¶8  We begin with some background principles about the public records law.  The public records law provides a requester with the right "to inspect any record," "[e]xcept as otherwise provided by law."  Wis. Stat. § 19.35(1)(a).  Public records are thus presumptively open for inspection unless there are statutory or common law exceptions to disclosure, and public access may be withheld "only in an exceptional case."  Wis. Stat. § 19.31; Linzmeyer v. Forcey, 2002 WI 84, ¶¶10-11, 254 Wis. 2d 306, 646 N.W.2d 811.  Once a request is made, it must be responded to or denied "as soon as practicable and without delay."  § 19.35(4)(a).  The decision of whether to permit public access to a record in response to a request lies with the custodian of the record, not its subject.  See State ex rel. Bilder v. Township of Delevan, 112 Wis. 2d 539, 558, 334 N.W.2d 252 (1983).

¶9  Related to that premise is the general rule under Wis. Stat. § 19.356(1) that "no person is entitled to judicial review of the decision of an authority to provide a requester with access to a record."  See Wis. Stat. § 19.356(1); see also Moustakis, 368 Wis. 2d 677, ¶24.  That rule was adopted by the legislature in response to our decisions in Woznicki v.

Erickson, 202 Wis. 2d 178, 549 N.W.2d 699 (1996), and Milwaukee Teachers' Education Association v. Milwaukee Board of School Directors, 227 Wis. 2d 779, 596 N.W.2d 403 (1999), which held that public employees had a common-law right to notice and pre-release judicial review before records concerning them could be released.  See Moustakis, 368 Wis. 2d 677, ¶27.

¶10 Although § 19.356(1) generally prohibits pre-release notice or judicial review of a response to a public records request, there are exceptions.  Three are enumerated in § 19.356(2)(a)1.-3., and apply to certain categories of records regarding public employees or records "obtained by the authority through a subpoena or search warrant."  § 19.356(2)(a)2.  These exceptions were enacted to "limit the rights afforded by [Woznicki and Milwaukee Teachers] 'only to a defined set of records pertaining to employees residing in Wisconsin.'" Moustakis, 368 Wis. 2d 677, ¶27 (quoting 2003 Wis. Act. 47, Joint Legis. Council Prefatory Note).  In addition to the specific exceptions, Wis. Stat. § 19.356(1) also contains a catchall exception, providing that notice or pre-release judicial review may also be available when "otherwise provided by statute."  Id.

B

¶11 Turning to this case, WMC offers two reasons why the general prohibition on pre-release judicial review of a response to a public records request does not apply to its claims at all. First, it argues that pre-release judicial review is almost

7

always available under the Declaratory Judgments Act.  Second, it claims that § 19.356(1) did not eliminate the common-law right to pre-release judicial review.

1

¶12  WMC argues that the general prohibition against pre-release judicial review in § 19.356 does not apply to declaratory judgment claims because, if it does, WMC has no statutory remedy for improper disclosures of public records. Typically, a declaratory judgment claim is available when a statute does not provide for an equally "speedy, effective, and adequate" remedy.  See Lister v. Bd. of Regents, 72 Wis. 2d 282, 307-08, 240 N.W.2d 610 (1976); see also Lamar Cent. Outdoor, LLC v. DOT, 2008 WI App 187, ¶19, 315 Wis. 2d 190, 762 N.W.2d 745. Conversely, a party may not bring a declaratory judgment claim when the remedy provided by statute is "at least as well-suited to the plaintiff's needs as declaratory relief."  See Lister, 72 Wis. 2d at 307-08.  In WMC's view, § 19.356 provides an adequate remedy only to the "three narrow categories" of individuals specified in § 19.356(2)(a)1.-3., since they are expressly entitled to pre-release judicial review.  See Wis. Stat. § 19.356(2)(a)1.-3. (providing for pre-release notice and judicial review when certain employment records or records obtained via subpoena or search warrant are about to be released).  WMC asserts that, by contrast, § 19.356 provides nothing for anyone——including WMC——who falls outside those three

8

narrow categories.[8]   Thus, relying on <u>Lister</u> and <u>Lamar Central</u>, WMC argues that a declaratory judgment claim must be available to everyone who falls outside of § 19.356(2)(a).  Otherwise they would have no remedy, let alone an adequate one.

¶13 Neither <u>Lister</u> nor <u>Lamar Central</u> support WMC's position, however.  In both of those cases, the plaintiffs attempted to enforce an underlying right through a declaratory judgment action even though a statute provided an exclusive procedure for enforcing that right.  <u>See</u> <u>Lister</u>, 72 Wis. 2d at 307-09 (right to collect debts from state agencies); <u>Lamar Cent. Outdoor</u>, 315 Wis. 2d 190, ¶24 (right to challenge a DOT order to remove roadside signs).  The question in both cases was thus whether the statute's exclusive enforcement procedure barred declaratory judgment claims premised on that underlying right. <u>See</u> <u>Lister</u>, 72 Wis. 2d at 307-09; <u>Lamar Cent. Outdoor</u>, 315 Wis. 2d 190, ¶¶32-33.  Section 19.356(1) is different.  It states a general rule that no one has the right to a particular remedy——pre-release judicial review——and then enumerates exceptions to that rule.  <u>See</u> Wis. Stat. § 19.356(1), (2)(a)1.-3.  Thus, § 19.356 makes clear that no one has a right to block the release of a public record unless otherwise specified.

---

[8] There appears to be tension between this argument and WMC's alternative argument that the Declaratory Judgments Act is a statute that "otherwise provide[s]" for pre-release judicial review under § 19.356, and thus (if WMC is correct) provides them with a remedy.

9

Because there is no underlying right to pre-release judicial review, the analysis in <u>Lister</u> and <u>Lamar Central</u> is inapposite.[9]

2

¶14 WMC's second argument, that § 19.356(1) did not clearly abrogate the common law rules for pre-release notice and judicial review, also fails. This argument took several forms throughout this case, but we understand WMC to be arguing that § 19.356 did not eliminate the common law rights to pre-release notice and judicial review that we recognized in <u>Woznicki</u> and <u>Milwaukee Teachers</u>. See <u>Moustakis</u>, 368 Wis. 2d 677, ¶27 (explaining that <u>Woznicki</u> and <u>Milwaukee Teachers</u> "held that public employees were entitled to notice and to seek pre-release judicial review of the response to records requests pertaining to them"). WMC contends that § 19.356 applies only to the kinds of employment records that were at issue in those cases.

---

[9] This is also why we reject WMC's related argument that reading § 19.356(1) to bar its claims would mean that § 19.356 "implicitly repeal[ed]" the Declaratory Judgments Act. See <u>Heaton v. Larsen</u>, 97 Wis. 2d 379, 392-93, 294 N.W.2d 15 (1980) ("Repeals by implication are not favored in the law." (quoting another source)). This argument is underdeveloped and confusing, but so far as we can tell, WMC argues that any time a statute precludes declaratory relief, that is the same as partially "repealing" the Declaratory Judgments Act. WMC cites no authority for this novel claim. And, in any event, § 19.356 did not partially repeal the Declaratory Judgments Act—implicitly or otherwise. As explained above, by adopting § 19.356, the legislature expressly limited the right to pre-release judicial review. In doing so, it did not alter the Declaratory Judgments Act in any way.

Because WMC's claims do not involve those kinds of records, it concludes that § 19.356 does not apply.

¶15 Section 19.356(1), however, clearly and unambiguously abrogated the common law rights created in Woznicki and Milwaukee Teachers. See United Am., LLC v. DOT, 2021 WI 44, ¶15, 397 Wis. 2d 42, 959 N.W.2d 317. The statute provides in no uncertain terms that "[e]xcept as authorized in this section or as otherwise provided by statute . . . no person is entitled to judicial review of the decision of an authority to provide a requester with access to a record." Section 19.356 does not distinguish between different categories of individuals or records; it states a general rule that applies to all claims for pre-release judicial review and provides two types of exceptions. The first are those contained in § 19.356(2)-(9), and allow for pre-release notice and judicial review when the types of records at issue in Woznicki and Milwaukee Teachers are involved, subject to heightened rules and expedited procedures. The second exception is for all other instances in which a statute "otherwise provide[s]" for pre-release notice or judicial review. This statutory language—a general prohibition subject to statutorily enumerated exceptions—cannot coexist with a common-law entitlement to pre-release notice or judicial review. Therefore, we hold that § 19.356(1) clearly and unambiguously eliminated the common-law rights on which WMC relies.

11

C

¶16 Anticipating our conclusion that § 19.356(1) applies to the claims it asserts in this case, WMC argues that the Declaratory Judgments Act, Wis. Stat. § 806.04, falls within the exception to § 19.356(1) for statutes that "otherwise provide[]" for pre-release judicial review of records responses.  We reject this claim because it is contrary to the text of both the Act itself and § 19.356.

¶17 To begin with, the text of the Declaratory Judgments Act is broadly applicable and looks nothing like the other statutes where the legislature has specifically authorized actions to block an impending release of records.  The Declaratory Judgments Act states generally that "[a]ny person . . . whose rights, status or other legal relations are affected by a statute . . . may have determined any question of construction or validity arising under the . . . statute . . . and obtain a declaration of rights, status, or other legal relations thereunder."  Wis. Stat. § 806.04(2).  It provides a means "to settle and to afford relief from uncertainty and insecurity with respect to rights, status and other legal relations."  Wis. Stat. § 806.04(12).  In contrast, the legislature has adopted several statutes specifically creating a right to block the release of certain types of records.  For example, the parties agree that Wis. Stat. § 146.84(1)(c) authorizes a patient to obtain pre-release judicial review when their confidential health records are in danger of being released.  See Wis. Stat. § 146.84(1)(c) ("An

12

individual may bring an action to enjoin any violation" of certain confidentiality provisions).[10]  Similarly, Wis. Stat. §§ 51.30(9)(c), 46.90(9)(c), 55.043(9m)(c), and 196.135 also explicitly provide for injunctive relief barring the release of records.  E.g., § 51.30(9)(c) (providing that "[a]n individual may bring an action to enjoin any violation of this section," which generally prohibits the disclosure of certain types of medical treatment records).  Section 196.135 is even more direct, expressly referencing § 19.356 and authorizing both pre-release notice and an opportunity for judicial review of a planned records response.  See § 196.135(4)(b).

¶18 Unlike these statutes, the Declaratory Judgments Act does not explicitly authorize an action to enjoin the release of a record.  Indeed, it says nothing at all about records.  As explained above, however, other statutes address the issue, strongly suggesting that the Act is not a statute that "otherwise provide[s]" for pre-release judicial review.  See Rudolph v. Indian Hills Estates, Inc., 68 Wis. 2d 768, 775, 229 N.W.2d 671 (1975) (concluding that the Declaratory Judgments Act did not provide a claim for the dissolution of a corporation

---

[10] Although WMC alleges that DHS's planned release of its list of employers would violate the patient health care records statutes, it concedes that it cannot rely on those statutes to obtain pre-release judicial review here because it is not an "individual" authorized to seek injunctive relief under § 146.84(1)(c).  See § 146.84(1)(c) (referring to violations of §§ 142.82 and 142.83, both of which protect "patients"; in turn, "patient" is defined in § 146.81(3) as "a person who receives health care services from a health care provider").

13

where such actions were already expressly provided for in other statutes).

¶19 Moreover, concluding that the Declaratory Judgments Act "otherwise provide[s]" for pre-release judicial review of a public records response would effectively repeal § 19.356(1). As discussed previously, the legislature enacted § 19.356 to limit the rights to pre-release notice and judicial review that this court created in Woznicki and Milwaukee Teachers.[11] See Moustakis, 368 Wis. 2d 677, ¶27. Although those rights may have been enforceable via a declaratory judgment action while they existed, the legislature abrogated them when it adopted § 19.356. WMC cannot use the Act to circumvent either § 19.356 or the other statutorily authorized routes for obtaining that review.

¶20 Additionally, WMC's interpretation gives no effect to other statutes, such as those cited above, that allow for injunctive relief against records releases. See State ex rel. Kalal v. Cir. Ct. for Dane Cnty., 2004 WI 58, ¶46, 271 Wis. 2d 633, 681 N.W.2d 110 ("Statutory language is read where possible to give reasonable effect to every word, in order to avoid surplusage."). That is, if the Declaratory Judgments Act

---

[11] The Joint Legislative Council's prefatory note to 2003 Wis. Act 47 confirms this conclusion, explaining that § 19.356 "applies the rights afforded by Woznicki and Milwaukee Teachers' only to a defined set of records pertaining to employees residing in Wisconsin." See also Moustakis, 368 Wis. 2d 677, ¶27 n.17 ("Legislative history may be consulted to confirm a plain meaning interpretation.").

14

generally provides for pre-release judicial review, then there would be no reason for the legislature to have also specifically authorized such review in narrower contexts elsewhere in the statutes. Indeed, WMC's position would undo the legislature's choice to preclude pre-release judicial review in most circumstances.

¶21 Accordingly, we hold that the Declaratory Judgments Act does not "otherwise provide[]" for pre-release judicial review of records responses. See § 19.356(1).

IV

¶22 In conclusion, we affirm the court of appeals' decision and hold that WMC's complaint fails to state a claim upon which relief may be granted because its claim is barred by § 19.356(1).

*By the Court.*—The decision of the court of appeals is affirmed.

15

¶23 ANNETTE KINGSLAND ZIEGLER, C.J. *(dissenting).* I dissent because the majority errs in affirming the court of appeals' decision dismissing this case. The court of appeals also erred in accepting the interlocutory appeal. In so doing, the court of appeals perpetuated the premature dismissal of this case. The court of appeals, and now this court, fails to consider the fact that a motion to amend the pleadings was pending before the circuit court. The majority errs by affirming the dismissal of this case and does so with little analysis of the serious implications of its decision. The State is prepared to release individuals' personal medical information to the public. The law allows for such a release to be challenged. The majority instead engages in a monocular view of one statute and makes no mention of the perhaps unintended consequences of its action. It closes the courthouse doors to anyone who may wish to challenge the release of personal medical information. This is egregious error.

¶24 The majority, like the court of appeals, fails to properly consider the procedural posture of this case. Unfortunately, this error has great significance to the individuals whose personal and confidential medical information will be released. As a result of the majority's error, the names of businesses that have had employees who tested positive for COVID-19, and the number of employees who tested positive will be published. Significantly, private patient files that are confidential by law, may become public records subject to the public records law, and if the government has gathered

personal medical information, the confidential status of that information is gone and cannot be challenged. The damage that will be done by public disclosure of private information is irreparable.

¶25 This case was merely at the pleadings stage in the circuit court, with a motion to amend the pleadings pending, when the court of appeals took the unusual step of granting interlocutory appeal over these non-final pleadings and determining essentially that these private confidential patient files are indeed public records and their release cannot be challenged by anyone. The court of appeals' decision should be reversed and the cause remanded to the circuit court so that the circuit court can consider whether to allow the pleadings to be amended. To dismiss this case at this juncture is error and interlocutory intervention was error.

¶26 The majority's exceedingly short analysis in this case makes little to no reference to the procedural posture of the case and the pending motion to amend the pleadings below. The majority claims that it resolves the case on grounds other than standing and therefore assumes without deciding that petitioners, Wisconsin Manufacturers and Commerce, Muskego Area Chamber of Commerce, and New Berlin Chamber of Commerce and Visitors Bureau (collectively, "the Associations") have standing. See majority op., ¶1 n.2. The majority focuses on one public records statute in its analysis. The majority claims that the general prohibition against pre-release judicial review found in Wis. Stat. § 19.356 does not apply to declaratory

2

judgment claims because the Associations have no statutory remedy for violations of the public records law. The majority concludes that § 19.356's language is clear that no one has a right to block the release of a public record unless otherwise specified. The majority makes no mention of the individuals' confidential medical information that is at stake. The majority does not consider the amended pleadings below wherein individuals make this claim. The majority gives no consideration to the fact that a class action of those individuals could make a claim if allowed by amended pleading.

¶27 To be clear, the implications of the majority's conclusions are sweeping. Shortly after the outbreak of COVID-19, on July 1, 2020, media outlets reported that Governor Evers and his then-Secretary of Health Palm planned to publish names of all Wisconsin businesses that had recorded at least two COVID-19 cases. M.D. Kittle, "Breaking: Evers' DHS Outing Businesses with COVID Cases," Empower Wisconsin (July 1, 2020), https://empowerwisconsin.org/breaking-evers-dhs-outing-businesses-with-covid-cases/. A number of businesses and the Associations sent a letter to the State explaining that releasing such information, even in response to a public records request, would violate statutory and constitutional provisions. The State then determined it would not publish the information.

¶28 Later that month the State changed its position and decided to release the names of over 1,000 employers across Wisconsin who had at least two employees test positive for COVID-19 or close contacts investigated by contact tracers. On

3

the heels of that announcement, the Associations filed an initial complaint with the circuit court and moved for a temporary restraining order and temporary injunction. The circuit court issued the temporary restraining order and set a motion hearing. At the hearing, the Journal Sentinel was granted status to intervene. Both the State and the Journal Sentinel moved to dismiss the complaint. On October 23, 2020, the Associations filed a first amended complaint and a combined brief opposing dismissal and supporting temporary injunction.

¶29 In the first amended complaint the Associations alleged that the State planned the release of this sensitive information and the business names and the number of known or suspected COVID-19 cases. The allegations were that there were more than 1,000 employers that met the State's criteria. The Associations alleged that the information the State planned to release was derived from diagnostic test results and the records of contract tracers investigating COVID-19. The Associations alleged that the information about whether an employee of a facility had tested positive for COVID-19 could come only from that individuals' medical records and that the State sought release of medical diagnostic tests conducted on numerous individuals. In addition, the Associations alleged that releasing a patient's employer's name would permit identification of the patient because the employer's name is patient identifiable data. The Associations alleged that given the relatively small number of employees in any facility, it would not be difficult for coworkers or community members to

4

discern the identity of the employee or employees who tested positive for COVID-19. The allegations were that the State originally obtained the medical records for the purpose of communicable disease surveillance and that responding to a public records request is not communicable disease surveillance. The Associations alleged that the release of confidential medical information of these employees would violate their right to privacy and unfairly harm the reputation of the Associations' members. The first amended complaint alleged irreparable harm. The Associations further alleged that its members are Wisconsin taxpayers, and that the plan to collect, review, and release this confidential medical information is an unlawful expenditure of public funds thus exposing the State to liability to be paid out of the public fisc.

¶30 On December 4, 2020, the circuit court entered orders denying the pending motions to dismiss and granting the Associations' motion for a temporary injunction. Thus, the Associations succeeded at the circuit court level. The case proceeded under the course of normal litigation.

¶31 Importantly, on December 12, 2020, the Associations filed the motion for leave to file a second amended complaint along with the proposed second amended complaint. The second amended complaint added claims from two anonymous individuals who tested positive for COVID-19 at the relevant time and who are and have been employees of a public-facing Wisconsin business with over 25 employees, which business had at least two individuals who tested positive for COVID-19. The individual

plaintiffs sought an injunction under Wis. Stat. § 146.84(1)(c). Section 146.84(1)(c) allows "individual[s]" to "enjoin any violation of s. 146.82 or 146.83 [regulating confidentiality of healthcare records] or to compel compliance with s. 146.82 or 146.83 . . . ." As the majority correctly identifies, this language allows individuals to obtain injunctive relief prior to disclosure of health care information, notwithstanding any limitations in Wis. Stat. § 19.356 on pre-disclosure relief. See majority op., ¶¶16-17. If the individuals' claims were permitted to proceed at the circuit court, they could have represented all individuals affected statewide in a class action. See Wis. Stat. § 803.08(1) (describing the prerequisites for obtaining class certification); Mussallem v. Diners' Club, Inc., 69 Wis. 2d 437, 445, 230 N.W.2d 717 (1975) ("[I]t [is] in the public interest as declared by the legislature to permit class actions in those cases which meet the [statutory] criteria . . . .").

¶32 There is no indication that the Associations' motion to amend was improper, untimely, or in any way outside the normal course of behavior in civil cases. It was filed at the very beginning of litigation, before the parties had engaged in any discovery and the defendants had developed any reliance on the nature of the complaint. The most significant amendment was adding new parties; the facts and the legal claim did not change. At the time the motion to amend was filed, the Associations were facing no court order mandating dismissal, nor a pending motion to dismiss. There are no signs of gamesmanship

6

on the part of the Associations and no indication of unfairness to the defendants.

¶33 Under Wis. Stat. § 802.09, it is the established policy of this state that leave to amend pleadings must be "freely given at any stage of the action when justice so requires." § 802.09(1). Like most American courts, we rejected long ago highly formalistic and technical pleading procedures. We abandoned a prior system that punished unknowing plaintiffs for minor procedural errors with outright dismissal on the merits. Korkow v. General Cas. Co. of Wis., 117 Wis. 2d 187, 193, 344 N.W.2d 108 (1984). Now, pleadings are intended to provide the defendant "reasonable notice . . . [of] the nature of the claim," not as a means to set legal minefields and dismiss valid lawsuits. CED Properties, LLC v. City of Oshkosh, 2014 WI 10, ¶21, 352 Wis. 2d 613, 843 N.W.2d 382. The first and foremost goal of the pleading stage is to encourage resolution of the case on the merits. Foman v. Davis, 371 U.S. 178, 181-82 (1962) ("It is too late in the day and entirely contrary to the spirit of the Federal Rules of Civil Procedure [on which Wisconsin rules of civil procedure are modeled] for decisions on the merits to be avoided on the basis of such mere technicalities."). There is a strong preference for permitting amendments to a complaint, and § 802.09 is "liberally construed to permit the amendment of the pleadings so as to present the entire controversy." Tri-State Home Improvement Co., Inc. v. Mansavage, 77 Wis. 2d 648, 658, 253 N.W.2d 474 (1977).

¶34 After the Associations had successfully defeated the motions to dismiss and had filed a valid motion to amend, the Journal Sentinel filed a petition for leave to appeal the circuit court's order denying its motion to dismiss. The State also filed a petition for leave to appeal the circuit court's orders denying its motion to dismiss and granting the temporary injunction. The Associations opposed the petitions for leave noting that given the pending motion to amend the complaint, an interlocutory appeal would not serve to dispose of the case. Given our liberal pleading standards, the Associations knew they had a right to have their claims heard on the merits; they complied with standard civil practice, and the defendants were not in any way prejudiced or deprived of adequate notice. Tri-State Home Improvement, 77 Wis. 2d at 658; Hess v. Fernandez, 2005 WI 19, ¶23, 278 Wis. 2d 283, 692 N.W.2d 655 (explaining that a defendant can overcome the preference for amendments by demonstrating "undue delay, [dilatory] motive, and prejudice" (citing Foman, 371 U.S. at 182)).

¶35 While decisions to grant or deny temporary injunctions are frequently reviewed on interlocutory appeal, e.g., Werner v. A.L. Grootemaat & Sons, Inc., 80 Wis. 2d 513, 259 N.W.2d 310 (1977), interlocutory appeal of denials of motions to dismiss, routine motions that proliferate common civil practice, are highly restricted. The court has recognized that granting interlocutory appeal for non-orders are permitted only in "special circumstances," given that they carry "considerable disadvantages." Heaton v. Larsen, 97 Wis. 2d 379, 395-96, 294

8

N.W.2d 15 (1980); State v. Jendusa, 2021 WI 24, ¶20, 396 Wis. 2d 34, 955 N.W.2d 777. Interlocutory appeals are "inimical to the effective and fair administration [of the judicial system]" and encourage "piecemeal litigation." State v. Jenich, 94 Wis. 2d 74, 80, 288 N.W.2d 114 (1980); see also Firestone Tire & Rubber Co. v. Risjord, 449 U.S. 368, 374 (1981) (explaining that requiring a final judgment prior to appeal "emphasizes the deference that appellate courts owe to the trial judge as the individual initially called upon to decide the many questions of law and fact that occur in the course of a trial," prevents "piecemeal appeals [which] would undermine the independence of the district judge," and avoids "the obstruction to just claims that would come from permitting the harassment and cost of a succession of separate appeals from the various rulings to which a litigation may give rise, from its initiation to entry of judgment").

¶36 Despite the Associations having a well-established right to have their motion to amend reviewed, and favorably considered, the court of appeals granted the petitions for leave to appeal, consolidated the appeals, and set the case for accelerated briefing. Thus, the court of appeals chose to opine on the sufficiency of a complaint that, in all likelihood, had no remaining importance in the dispute. Once a complaint is amended, the allegations and claims in the original complaint have no legal effect. See Holman v. Family Health Plan, 227 Wis. 2d 478, 487, 596 N.W.2d 358 (1999) ("An amended complaint supplants the original complaint when the amended complaint

9

makes no reference to the original complaint and incorporates by reference no part of the original complaint."); see also Crawford v. Tilley, 15 F.4th 752, 759 (6th Cir. 2021) ("The general rule is that filing an amended complaint moots pending motions to dismiss." (collecting cases)).  And there was no convincing reason to deny the motion to amend.

¶37 On April 5, 2021, the court of appeals issued its decision reversing the circuit court's orders denying the motions to dismiss and ordering the circuit court on remand to dismiss the complaint with prejudice and vacate the temporary injunction.  The court of appeals recognized that the Associations had moved to amend their complaint before the defendants filed an interlocutory appeal, but it chose not to address the merits of that motion.  The court of appeals speculated, without citation or legal analysis, that the circuit court could "consider . . . the propriety of such a second amended complaint" after the case had been dismissed.  Wis. Mfrs. & Com. v. Evers, 2021 WI App 35, ¶46 n.11, 398 Wis. 2d 164, 960 N.W.2d 442.

¶38 The court of appeals' mandate left the future of the case in serious uncertainty.  Nonetheless, what is clear is the court of appeals dissolved the circuit court's injunctive order that prevented disclosure of sensitive health care information. Even if the motion to amend before the circuit court is valid, and even if the second amended complaint would justify immediate injunctive relief, the orders directed at the State would be vacated by the court of appeals' decision.  In a matter of

hours, the medical information of thousands of Wisconsites could be released. If a circuit court showed as much disregard for a motion to amend and the liberal pleading system as the court of appeals did in this case, there would be a very strong case for reversible error. See, e.g., Tri-State Home Improvement, 77 Wis. 2d at 658-61 (concluding that a circuit court erroneously exercised its discretion when it denied a motion to amend the pleadings filed after trial in the case began, because newly added claims would not have surprised the defendants, the new claims could have been successful, and the amendments would not materially prejudice the defendants). When the court of appeals speaks in the future of Wisconsin's favorable posture toward motions to amend, it will certainly have less ground to stand on.

¶39 Interlocutory appeal is an extraordinary action and ought not be granted lightly by the court of appeals. The court of appeals erred in failing to consider the status of the case below, with a pending motion to file a second amended complaint to include two individual plaintiffs. The court of appeals never should have granted interlocutory appeal. To conclude dismissal was appropriate, it undertook extraordinary measures to close judicial relief to individuals who have the right to contest the release of this medical information. It short-circuited the standard judicial process and deprived the Associations the ability to present their full case on the merits.

11

¶40 While the majority, like the court of appeals, gives a minor gesture to the pending motion to amend, it leaves the remaining litigation in substantial uncertainty. Majority op., ¶5 n.7. Should the motion to amend be considered as it would have been if the court of appeals had not seized jurisdiction? The Associations did nothing wrong here; they filed a motion to amend prior to any adverse court order. Or, given that this court is mandating dismissal with prejudice of the case, must the Associations meet the higher burden of amending the complaint after entry of a dismissal order? Tietsworth v. Harley-Davidson, Inc., 2007 WI 97, ¶26, 303 Wis. 2d 94, 735 N.W.2d 418 ("The presumption in favor of amendment . . . applies logically only before judgment has been entered in the case." (citing Mach v. Allison, 2003 WI App 11, ¶27, 259 Wis. 2d 686, 656 N.W.2d 766)). Do the Associations, the named plaintiffs in this case, have standing to request the addition of third parties when the Associations themselves have no claim?

¶41 These problems would not have come about if the court of appeals had reserved judgment and allowed the circuit court to do its job. Instead, it impatiently removed this case from the circuit court before a pending and facially valid motion to amend was resolved. The court of appeals' actions in this case are extraordinary and clearly erroneous. The individuals included in the second amended complaint can simply file another lawsuit after dismissal of this case. Thus, despite the hundreds of pages of briefing, hours of oral argument time, and months of attorney fees for the litigants and taxpayers, this

12

appellate process as a whole may not advance lower court proceedings in material way. Likely, the only significant result of this appeal is that, during the forthcoming period of uncertainty, between issuance of this decision and the resolution of the motion to amend (or the filing of a new lawsuit), the State has the green light to release massive amounts of healthcare information. For that period of time, irreparable and illegal harm can be done.

¶42 The decisions of the court of appeals and today, the majority, focus solely on whether the Associations are the proper parties to challenge the State's release of information on positive COVID-19 tests. This entire appeal could have been avoided if the pending motion to amend were granted. While some may dislike the Associations or their claims, every jurist should be concerned by appellate courts engaging in divide-and-conquer procedural tactics, carving up complaints and dismissing claims before a full merits review. Here, the Associations' claims are dismissed on largely procedural grounds, but no guidance is given to the litigants or the public as to whether the State's proposed disclosures are actually legal. The decisions by the court of appeals and majority in this case endorse substantial procedural barriers for the named plaintiffs and a reduced body of caselaw to guide decision making in Wisconsin.

¶43 The majority refuses to address the pending motion to amend, but the analysis the majority does provide is equally concerning. In Wisconsin, standing is a low bar. McConkey v.

13

Van Hollen, 2010 WI 57, ¶15, 326 Wis. 2d 1, 783 N.W.2d 855. Standing is to be construed broadly in favor of those seeking access to the courts. Contrary to this court's precedent, the court of appeals concluded that a legally protectable interest for purposes of a Declaratory Judgments Act lawsuit and establishing standing are different things. Wis. Mfrs. & Com., 398 Wis. 2d 164, ¶¶27-29. The court of appeals erred. There need not be a statutory or constitutional provision at issue in a Declaratory Judgments Act case. Of course, declaratory judgments can be brought under common law rights, such as those established in contract law. See, e.g., F. Rosenberg Elevator Co. v. Goll, 18 Wis. 2d 355, 118 N.W.2d 858 (1963). In fact, if establishing a legally protectable interest for purposes of the declaratory judgment is not the same as standing, then the Declaratory Judgments Act four-factor test would not require any showing of standing. See Foley-Ciccantelli v. Bishop's Grove Condominium Ass'n, Inc., 2011 WI 36, ¶47, 333 Wis. 2d 402, 797 N.W.2d 789 ("[T]he concepts of standing and justiciability (a legally protectable interest) have been viewed as overlapping concepts in declaratory judgment cases.").

¶44 Here, the Associations have adequately alleged standing. Moreover, the second amended complaint, if allowed, states more, not less, in terms of standing. The second amended complaint alleges a violation of a medical records statute. The second amended complaint alleges that the release of confidential medical information would violate Wis. Stat. § 146.82 and its confidentiality requirement. The allegations

14

of the second amended complaint are that the planned release of these confidential documents does not fall under any exception in § 146.82.  More needs to be known and the merits must be reviewed before this lawsuit can be dismissed.  The public records statute alone does not dictate the answer.  The majority does nothing to reconcile the conflict the public records statute has with the medical records provisions.

¶45 When the court of appeals concluded that the Associations lacked taxpayer standing, its reasoning erred with respect to the implausibility standard.  The majority must recognize that at this stage of the proceedings, alleged facts must be accepted as true, and the pleadings must be construed liberally such that any reasonable inferences arising from those facts are construed in favor of the non-moving party.  Data Key Partners v. Permira Advisers LLC, 2014 WI 86, ¶21 n.9, 356 Wis. 2d 665, 849 N.W.2d 693 ("Factual assertions are evidenced by statements that describe: who, what, where, when, why, and how." (quotations omitted)).

¶46 In addition, for this procedural error regarding the proper standard to apply, this court errs:  without analyzing or considering any developed facts or legal analysis, this court affirms the court of appeals' decision which held, for the first time in Wisconsin, as a matter of law, information within patient health care records is somehow not confidential so long as the government obtains the information.  The court of appeals reasoned that Wisconsin's healthcare privacy statutes do not protect "information that is merely derived from a record."

15

Wis. Mfrs. & Com., 398 Wis. 2d 164, ¶24 n.9. Absent extraordinary circumstances where the information appears in a "functional[ly] equivalent" manner as the original record, under the court of appeals' reasoning, the State can publicly disclose private healthcare records if the information therein is simply restated in a government record. Id. Notably, the court of appeals concluded the private COVID-19 testing information at issue in this case was not subject to confidentiality protections. Id. Under the plain text of Wis. Stat. § 146.82, "[a]ll patient health care records shall remain confidential." There is no exception for healthcare records that have been restated in government records. Absent informed consent of the patient or person authorized by the patient, healthcare records are indeed confidential. § 146.82(1); Johnson v. Rogers Mem'l Hosp., Inc., 2005 WI 114, ¶33, 283 Wis. 2d 384, 700 N.W.2d 27. The majority makes no effort to explain how this provision can be reconciled with the public records law or the court of appeals' decision.

¶47 Uncorrected, as the majority has now done, the court of appeals' interpretation of Wis. Stat. § 146.82 can have devastating statewide consequences for medical privacy. Consider whether this request were for patients with certain other diseases or private conditions. It could be someone who suffers a miscarriage, or has cancer. It could be a person who has a sexually transmitted disease, a sex crime victim, or an individual who suffers from mental illness. Under the majority's interpretation, all may have intimate healthcare

16

information disclosed to the public.  All that would be required is that the government somehow garners the information, and there can be no objection to the release of that information. The second amended complaint specifically lists individuals who would be harmed by the release of this information, but the majority precludes them from potentially seeking any relief.  If the medical information is released when the Associations are dismissed and the injunction in this case is lifted, the individuals will have no means to obtain meaningful relief. Once their information is made public, the individuals cannot later make the information private.

¶48  In short, the majority affirms the court of appeals' decision, which is riddled with error.  The majority opinion today goes further to profoundly impact the confidentiality of individual patient records.  Pleadings are to be liberally construed and here, the majority does not even address the fact that any action by the court of appeals was premature because the pleadings below were not fully complete.  At this stage in the proceedings, it is error to dismiss this case and close the courthouse doors to those seeking to protect private confidential information.  To determine that the only actual records protected are the medical records themselves, and not the information contained therein, has the potential for sweeping negative consequences.  Before today's decision by this court, the information contained in medical records was obviously confidential, as well as the record itself.  An individual could object to release of confidential information.

¶49 However, by affirming the court of appeals, the majority has determined that because the government has gathered information from individuals' confidential records, that information loses confidentiality. The individual who is the subject of that information has no right to review or object to its release. This court has permitted the weaponization of private health information, so long as the government has gathered that information. It has also incentivized gamesmanship by dismissing a lawsuit on procedural grounds before the plaintiffs have had a full and complete opportunity to amend their complaint and provide arguments on the merits. This is a dangerous course for the citizens of the state of Wisconsin. It is also contrary to the law. At a minimum, this lawsuit should not be dismissed. Interlocutory relief was incorrectly granted by the court of appeals, and the circuit court below should be permitted to proceed with the case and determine whether the complaint should be amended.

¶50 For the foregoing reasons, I respectfully dissent.

¶51 I am authorized to state that Justices PATIENCE DRAKE ROGGENSACK and REBECCA GRASSL BRADLEY join this dissent.